934 So.2d 51 (2006)
STATE of Louisiana
v.
Matthew KELLEY.
No. 2005-K-1905.
Supreme Court of Louisiana.
July 10, 2006.
*52 Charles C. Foti, Jr., Attorney General, Eddie J. Jordan, Jr., District Attorney, Meri M. Hartley, Assistant District Attorney, for Applicant.
Louisiana Appellate Project, Christopher A. Aberle, Mandeville, for Respondent.
PER CURIAM.
The state charged defendant with one count of possession of methamphetamine in violation of R.S. 40:967(C) and one count of possession of hydrocodone (Vicodin) with intent to distribute in violation of La. R.S. 40:967(A)(1). After the trial court heard and denied a motion to suppress the evidence, defendant entered pleas of guilty as charged on both counts, reserving his right to appeal the court's adverse ruling on the suppression issue. State v. Crosby, 338 So.2d 584 (La.1976). The court sentenced defendant on both counts to concurrent terms of three years imprisonment at hard labor, suspended, and placed him on active probation for three years. On appeal, the Fourth Circuit found that the police had secured the evidence as the result of an illegal arrest without probable cause, reversed the trial court's ruling on the motion to suppress, and remanded the case for further proceedings. State v. Kelley, 05-0332 (La.App. 4th Cir.6/29/05), 909 So.2d 1018 (Cannizzaro, J., dissenting). Because we agreed with the state that the conduct of the officers leading to the recovery of the evidence was objectively reasonable under the circumstances of their encounter with the defendant, we granted the state's application to reverse the decision below.
According to New Orleans Police Officer Randy Garrison, the only witness to testify at the hearing on the motion to suppress, on the morning of June 7, 2004, he and his partner acted on a complaint concerning a man slouched against the steering wheel of a car parked in the 3300 block of Upperline Street. The officers found the vehicle at the described location and observed the defendant sitting in the driver's seat leaning *53 forward over the steering wheel. The vehicle had out-of-state plates and the keys were in the ignition. Officer Garrison tapped on the window and defendant opened the driver's door of the car. The officer asked defendant whether he needed medical assistance. Defendant indicated that he did not, that he was "okay," and that he was "just there." Defendant further explained that the vehicle, which had two flat tires, belonged to a friend but that he did not recall how he got in the neighborhood.
At the officer's request, defendant produced his driver's license and a vehicle registration. Officer Garrison determined from a computer check that the license had been suspended and that the vehicle was not registered to defendant. The officer informed defendant that he was under arrest for operating a vehicle on a suspended license and asked him to step from the car for purposes of handcuffing him. When defendant got out of the car, Officer Garrison immediately spotted a clear bag containing a white powder which the officers believed was cocaine and a second bag filled with pills lying in open view on the front seat. The officers then advised defendant that he was also under arrest for drug violations. As to why he placed the defendant under arrest for operating the vehicle when he did not actually see the vehicle in motion, Officer Garrison explained at the hearing that defendant "was, in fact, behind the wheel of the car with the keys in the ignition of the car which led me to believe that he was actually the driver of that vehicle since he didn't live in that neighborhood."
At the close of the hearing, the trial judge agreed with the defendant that because the officers did not actually see him operating the vehicle which, in any event, had two flat tires, the arrest for the traffic violation appeared problematic. Nevertheless, the court denied the motion to suppress on grounds that Officer Garrison and his partner had acted reasonably in approaching the car to investigate the initial complaint and to check on defendant's well-being and that ultimately the contraband had then come into the plain view of the officers, justifying their seizure of the drugs and arrest of defendant for the narcotics violations.
On appeal, the Fourth Circuit concluded that, in fact, the officers did not have probable cause to arrest defendant for operating a vehicle on a suspended license because defendant "was merely sitting in a car with the headlights and motor turned off .... the car had two flat tires, which suggests that the car had been parked there for some time .... and [the officers] failed to check to see if the hood was warm which would have suggested that the motor had been running." Kelley, 05-0332 at 3-4, 909 So.2d at 1020-21. The court of appeal further found that the officers had no other justification for ordering defendant out of the vehicle, thereby exposing the contraband on the front seat to their view, because they had no reason to suspect that defendant was armed or otherwise posed a threat to their safety. Id. The court of appeal concluded that because the officers had arrested defendant without probable cause, the arrest was illegal and tainted the subsequent seizure of the drug packets on the front seat, as the evidence came into view only after the officers ordered defendant from the car to place him in custody. Id.
Dissenting from the panel opinion, Judge Cannizzaro observed that "[e]ven if probable cause for the arrest on the charge of driving with a suspended license did not exist," the officers nevertheless acted reasonably in approaching the vehicle to check on the defendant and that "[t]he lack of an explanation regarding Mr. *54 Kell[e]y's presence in a vehicle that was not his could clearly give rise to a reasonable suspicion that Mr. Kell[e]y was in possession of a vehicle without the proper authority, particularly when he had a key in the ignition." Kelley, 05-0332 at 2, 909 So.2d at 1022 (Cannizzaro, J., dissenting). Because the officers had reasonable suspicion to detain defendant by ordering him from the car as a matter of their own safety, Judge Cannizzaro further reasoned that "once Mr. Kell[e]y exited the vehicle, the police officers had the right to seize any evidence that was in plain sight without the necessity of a search warrant." Kelley, 05-0332 at 4, 909 So.2d at 1022 (Cannizzaro, J., dissenting).
For present purposes, we assume, arguendo, as did Judge Cannizzaro, that Officer Garrison lacked probable cause to arrest defendant on the apparent traffic violation because the circumstances known to the officer would not have justified a man of ordinary caution in believing that defendant had committed a crime. Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964); State v. Scales, 93-2003, p. 6 (La.5/22/95), 655 So.2d 1326, 1331; State v. Marks, 337 So.2d 1177, 1181 (La.1976). Nevertheless, "[t]he touchstone of [the] analysis under the Fourth Amendment is always `the reasonableness in all circumstances of the particular governmental invasion of a citizen's personal security.'" Pennsylvania v. Mimms, 434 U.S. 106, 108-09, 98 S.Ct. 330, 332, 54 L.Ed.2d 331 (1977)(quoting Terry v. Ohio, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878-79, 20 L.Ed.2d 889 (1968)). For purposes of the Fourth Amendment, the reasonableness of any intrusion on an individual's privacy interests "depends `on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers.'" Mimms, 434 U.S. at 109, 98 S.Ct. at 332 (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975)). The inquiry is a purely objective one that does not take into account the subjective intent or beliefs of the police. Whren v. United States, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996); State v. Wilkens, 364 So.2d 934, 937 (La.1978). Thus, as Judge Cannizzaro reasoned, the determinative question in the present case is not whether the police were right or wrong in claiming that they had probable cause to arrest defendant for driving under suspension when they ordered him from the vehicle and thereby brought the drug packets on the front seat into view, but whether their conduct up to that point was objectively reasonable under the Fourth Amendment.
We find that the officers' conduct conformed to that objective standard. The officers did not need either reasonable suspicion for an investigatory stop or probable cause for an arrest to act on the initial complaint, approach the defendant, inquire why he was in the vehicle parked at the side of the road and whether he needed medical assistance, and then to ask for some identification. State v. Fisher, 97-1133, pp. 4-5 (La.9/9/98), 720 So.2d 1179, 1183 ("[M]ere communications between officers and citizens implicate no Fourth Amendment concerns where there is no coercion or detention.") (citations omitted). See also State v. Lewis, 00-3136, p. 3 (La.4/26/02), 815 So.2d 818, 820 ("An officer's request for identification does not turn the encounter into a forcible detention unless the request is accompanied by an unmistakable show of official authority indicating to the person that he or she is not free to leave.") (citations omitted); State v. McDaniels, 01-0305, p. 1 (La.12/7/01), 803 So.2d 966, 967 (same); State v. Neyrey, 383 So.2d 1222, 1224 (La.1979)("Police officers *55 do not need probable cause to arrest, or reasonable cause to detain, in order to converse with citizens.... Under the circumstances of this case we do not think it was unreasonable for the officers to open the [car] door and shake the defendant awake so that they could talk to him.").
The routine computer check run by Officer Garrison was reasonable and hardly more intrusive than the initial request for identification. United States v. Holt, 264 F.3d 1215, 1221 (10th Cir.2001). That background check led to information that defendant's license was suspended and that the vehicle did not belong to him. In that context, defendant's statement that he was "just there," although he could not recall how he arrived at that location, at the wheel of a vehicle registered to someone else, with out-of-state plates and two flat tires but with the keys in the ignition, provided the requisite "minimal objective basis" for the officers to "maintain the status quo momentarily while obtaining more information," the hallmark of a Terry stop. State v. Fauria, 393 So.2d 688, 690 (La.1981).
Given an objective basis for detaining the defendant briefly to determine why he was "just there," the officers acted reasonably by requesting that he step from the car, even in the absence of any particularized suspicion that he was armed and dangerous. Mimms, 434 U.S. at 111, 98 S.Ct. at 333 ("The police have already lawfully decided that the driver shall be briefly detained; the only question is whether he shall spend that period sitting in the driver's seat of his car or standing alongside it.... What is at most a mere inconvenience cannot prevail when balanced against legitimate concerns for the officer's safety."). The officers then acquired probable cause to enter the vehicle after they observed the drug packets on the front seat and the exigencies of the situation excused the need for a warrant. Although the officers had clearly conveyed to defendant their subjective intent to arrest him on the traffic charge when they ordered him to step from the car, and had seized him for purposes of the Fourth Amendment when he complied, California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), they had not yet subjected him to any greater degree of restraint than the circumstances otherwise justified, i.e., they had not yet placed him in handcuffs and confined him in their patrol car before transporting him to the station house, see State v. Fisher, 97-1133, pp. 6-7 (La.9/9/98), 720 So.2d 1179, 1183-84 (handcuffing and transporting a civilian in a patrol unit from the streets to station house the unmistakable signature of an arrest), when they observed the contraband in open view on the front seat of the car, thereby acquiring probable cause to arrest him on the far more serious felony narcotics charges. Although the vehicle had two flat tires, it could still be driven away. See United States v. Alcorn, 329 F.3d 759, 761 (10th Cir.2003) ("[Alcorn] got into his truck, which by now had two flat tires, drove around additional barricades, got stuck again, but finally freed his truck and proceeded [through the intersection].... passing several houses ... [until he] eventually stopped and parked his car[.]"); United States v. Clemons, 201 F.Supp.2d 142, 143 (D.D.C.2002)("When [the officer] arrived at the corner ... he saw a black Monte Carlo with two flat tires driving in his direction. He made a U-turn, turned on his flashers and pulled up behind the vehicle which then stopped, presumably because the driver saw the police cruiser behind him."). The so-called automobile exception to the warrant requirement rests in part on the premise that if the officers may seize a vehicle and immobilize it for however long it takes to secure a warrant *56 they may conduct an immediate search. Chambers v. Maroney, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970). Thus, even assuming that the officers could not have searched the vehicle initially as an incident to a lawful arrest for operating the car on a suspended license because they lacked probable cause to arrest for that offense, cf. Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004) (as an incident to a lawful arrest, police may search interior of a vehicle even if recent occupant is outside the vehicle at the time of the search), their warrantless entry of the vehicle and seizure of the evidence plainly visible on the front seat remained lawful.
Accordingly, the decision of the court of appeal is reversed, and defendant's convictions and sentences are reinstated, and defendant is restored to his active probationary status.
DECISION OF COURT OF APPEAL REVERSED; CONVICTIONS AND SENTENCES REINSTATED.
VICTORY, Justice, additionally concurring with reasons.
VICTORY, J., additionally concurring.
I agree with the per curiam. However, I write separately to make it clear that I do not agree that Officer Garrison lacked probable cause to arrest the defendant.