PER CURIAM.
 
 [1]
 

 hWe granted the state’s application to consider the correctness of the Fourth Circuit’s decision overturning the trial court’s denial of defendant’s motion to suppress the marijuana found by New Orleans Police Officers concealed in a can of bug spray lying on the floorboard of a vehicle after a routine traffic stop.
 
 State v. Jackson,
 
 09-1028 (La.App. 4th Cir.9/9/09), 17 So.3d 523 (Bonin, J., concurring). For reasons that follow, we reverse the decision of the court of appeal and reinstate the judgment of the district court denying the motion to suppress.
 

 The state has charged defendant by bill of information with possession of marijuana, second offense, in violation of La.R.S. 40:966(D)(2). Defendant moved to suppress the evidence and at the hearing conducted on the motion, the state called a single witness, New Orleans Police Officer John Mclver, who |2described how a routine traffic stop he conducted with his partner, Officer Kevin Diel, on the night of November 11, 2008, lead to the arrest of the driver for several traffic violations and unauthorized use of a movable and of defendant for possession of marijuana, after Diel went into the glove compartment of vehicle to retrieve the paperwork for the car and pulled out an Enterprise rental agreement, which listed neither the driver nor the two other occupants of the car as a renter or authorized user.
 
 [2]
 
 As he re-
 
 *370
 
 trieved the rental agreement, Officer Diel detected the odor of burning marijuana emanating from the vehicle’s interior. Although a canine unit called to the scene failed to alert on the car, Diel went back into the vehicle after placing the driver under arrest and, in what Officer Mclver termed a “protective sweep” of the vehicle before they had it towed, retrieved a can of bug spay from the floorboard on the front passenger side where defendant had been sitting and where he had been observed by Mclver reaching down moments before the officers pulled over the car. Officer Diel opened the can through a false bottom, pulled out 13 bags of marijuana, and placed defendant under arrest.
 

 |sIn moving to suppress the evidence, defendant did not challenge the initial stop of the vehicle or the officers’ direction to step from the car. Nevertheless, relying on the recent Supreme Court decision in
 
 Arizona v. Gant,
 
 556 U.S. -, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009), he argued that because all three occupants of the car had been removed some distance away from the vehicle before Officer Diel searched the car, the officer’s warrantless entry of the vehicle exceeded the scope of a search incidental to a lawful arrest of the driver for traffic violation and was otherwise unsupported any reasonable belief the vehicle contained evidence of a crime.
 
 Gant,
 
 556 U.S. at -, 129 S.Ct. at 1723 (“Police may search a vehicle incident to a recent occupant’s arrest only if the arres-tee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest.”). However, the trial court denied the motion to suppress on grounds that it considered the search of the vehicle a logical extension of a typical inventory search conducted under standardized police procedures before the officers returned the car to Enterprise, a recognized exception to the warrant requirement.
 
 See Colorado v. Bertine,
 
 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987)(inventory search of a closed container in an impounded vehicle does not violate the Fourth Amendment if it is conducted according to standard police regulations and not in a bad faith effort to obtain incriminating evidence).
 

 The defendant sought review of that decision in the Fourth Circuit, which reversed the trial court’s ruling on grounds that the search conducted by Officer Diel could not be rationalized under the inventory exception to the warrant requirement because the officer conducted it before, not after, the vehicle was towed from the scene and without contacting either Enterprise or the renter of the |4vehicle to retrieve the car.
 
 Jackson,
 
 09-1028 at 3. The court of appeal otherwise agreed with defendant that
 
 Gant
 
 was controlling and that Officer Diel’s search could not be upheld as incidental to the arrest of the driver because all three of the vehicle’s occupants had been separated from the vehicle and therefore could not have regained access
 
 *371
 
 to the car while the officers conducted their investigation.
 
 Jackson,
 
 09-1028 at 2. The police otherwise lacked probable cause to search the vehicle because Office Diel “entered the car and picked up the can containing the marijuana
 
 after
 
 the narcotics dog had examined the car and did not alert to any contraband.”
 
 Id.
 
 The court of appeal thus determined that “[bjecause the seizure of the marijuana in this case cannot be upheld under any exception to the warrant requirement,” the trial court erred in denying the motion to suppress.
 
 Id.
 
 at 3.
 

 That any dispute exists in the present case over the legality of Officer Diel’s war-rantless entry into the vehicle and subsequent search of its interior, including the closed bug spray container, reflects a distinctive aspect of Louisiana law with respect to an individual’s standing to challenge unreasonable intrusions on the right to privacy guaranteed by La.Cont. art. I, § 5. At the federal level, it has long been settled that because “[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person’s premises or property has not had any of his Fourth Amendment rights infringed .... it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the [exclusionary] rule’s protections.”
 
 Rakas v. Illinois,
 
 439 U.S. 128, 134, 99 S.Ct. 421, 425, 58 L.Ed.2d 387 (1978);
 
 see also United States v. Salvucci,
 
 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980)(relevant inquiry under the Fourth Amendment considers “not merely whether the defendant had a possessory interest in the items seized, but [ f)whether he had an expectation of privacy in the area searched.”).
 
 Rakas
 
 thus held that passengers present in a vehicle with consent of the owner (and driver) had no Fourth Amendment claim against a police search of the vehicle’s glove compartment and under the seats because “these are areas in which a passenger
 
 qua
 
 passenger simply would not normally have a legitimate expectation of privacy.”
 
 Rakas,
 
 439 U.S. at 148-49, 99 S.Ct. at 433;
 
 cf. United States v. Paulino,
 
 850 F.2d 93, 96 (2nd Cir.1988)
 
 (“Rakas
 
 simply translated the standing inquiry into the threshold question of whether a defendant has a cognizable Fourth Amendment claim.”).
 
 Rakas
 
 specifically addressed a situation in which, as in the present case, the defendants did not challenge the legality of the vehicle’s initial stop or the police order to step from the car before the search was initiated but contested only the subsequent search of the vehicle on Fourth Amendment grounds.
 
 Id.,
 
 439 U.S. at 150-51, 99 S.Ct. at 434 (Powell, J., concurring).
 
 Rakas
 
 thus does not preclude passengers from challenging the lawfulness of their own detention as a result of the stop of the vehicle and any evidence derived as a product of that seizure.
 
 See United States v. Torres-Ramos,
 
 536 F.3d 542, 549 (6th Cir.2008);
 
 United States v. Pulliam,
 
 405 F.3d 782, 787 (9th Cir.2005);
 
 cf. Brendlin v. California,
 
 551 U.S. 249, 127 S.Ct. 2400, 2407, 168 L.Ed.2d 132 (2007) (all passengers in a car are seized along with the driver by a traffic stop and hence, passengers as well as the driver, have standing to challenge the lawfulness of the stop and the fruits of that seizure);
 
 see also
 
 6 Wayne R. LaFave,
 
 Search and Seizure,
 
 § 11.3(e), pp. 194-95 (4th ed 2004) (“If either the stopping of the car, the length of the passenger’s detention thereafter, or the passenger’s removal from it are unreasonable in a Fourth Amendment sense, then surely the passenger has [ (¡standing to object to those constitutional violations and to have suppressed any evidence found in the car which is their fruit.”) (footnotes omitted).
 

 
 *372
 
 On the other hand, in Louisiana, any person “adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.” La. Const, art. I, § 5. Thus, “[t]here is no equivalent under Louisiana constitutional law to the federal rule that one may not raise the violation of a third person’s constitutional rights.”
 
 State v. Owen,
 
 453 So.2d 1202, 1205 (La.1984). In Louisiana, as a general matter, whether defendant is the driver or a passenger of a vehicle stopped by the police has no bearing on whether he may challenge the lawfulness of a subsequent search of the car.
 
 See, e.g., State v. Smith,
 
 07-0815, pp. 5-7 (La. App. 5th Cir.3/11/08), 982 So.2d 821 (upholding denial of motion to suppress cocaine retrieved from vehicle in which defendant was riding as a passenger);
 
 State v. Scull,
 
 93-2360, pp. 4-7 (La.App. 4th Cir.6/30/94), 639 So.2d 1239, 1242-44 (affirming grant of motion to suppress currency retrieved from glove compartment of vehicle in which defendant was riding as a passenger after police lawfully stopped the car on reasonable suspicion of criminal activity).
 

 However, Article I, § 5 presupposes that “there must be an invasion of
 
 someone’s
 
 rights to privacy before there can be an unreasonable search.”
 
 State v. Perry,
 
 502 So.2d 543, 558 (La.1986). The test of when that intrusion occurs as a matter of the Louisiana constitution is identical to the Fourth Amendment standard,
 
 ie.,
 
 the person must possess an objectively reasonable expectation of privacy in the area.
 
 Perry,
 
 502 So.2d at 558;
 
 State v. Ragsdale,
 
 381 So.2d 492, 497 (La.1980) (“The test for determining whether one has a reasonable expectation of privacy is not only whether the person had an actual or subjective |7expectation of privacy, but also whether that expectation is of a type which society at large is prepared to recognize as being reasonable.”). Thus, as matter of both federal and Louisiana law, an individual knowingly in possession of a stolen vehicle does not have standing to contest the legality of a seizure and search of the vehicle by the police without a warrant because neither he nor any of his passengers has an objectively reasonable expectation of privacy in the car.
 
 See United States v. Miller,
 
 84 F.3d 1244, 1249-50 (10th Cir.1998) (“The mere fact an individual has physical possession of a vehicle does not necessarily give that person a reasonable expectation of privacy in it. Rather, he has no reasonable expectation of privacy unless he proves he had lawful ownership or possession of the vehicle at the time of the search.”) (citations omitted);
 
 United States v. Tropiano,
 
 50 F.3d 157, 161 (2nd Cir.1995) (“Although we have not had occasion to hold so until now, we think it obvious that a defendant who knowingly possesses a stolen car has no legitimate expectation of privacy in the car.”) (collecting cases);
 
 State v. Rivers,
 
 420 So.2d 1128, 1132 (La.1982) (under Fourth Amendment, “the occupant of a vehicle which he knows is stolen does not have a reasonable expectation of privacy in that vehicle.”);
 
 State v. Hill,
 
 99-1021, p. 11 (La.App. 4th Cir.9/8/99), 743 So.2d 773, 779 (“At the time that the police officers actually stopped the Lincoln Continental [in which Hill was riding as a passenger] and found the contraband under the front passenger seat, they reasonably believed that the car was stolen and Hill had no expectation of privacy in the stolen Continental.”);
 
 State v. Nicholson,
 
 95-2526, p. 2 (La.App. 4th Cir.2/15/96), 669 So.2d 1280, 1282 (“The defendant Nicholson did not have a reasonable expectation of privacy in the stolen Toyota Tercel parked in the driveway of his residence.”).
 

 | sIn the present case, Officer Diel’s entry into the vehicle used in violation of the
 
 *373
 
 contract between Enterprise and the renter clearly did not violate any privacy rights of Enterprise as the owner of the vehicle with an interest in the legitimate use of its property within the limits of its agreement with the renter. With respect to the driver who had possession of the vehicle, no evidence was adduced at the suppression hearing as to the identity of the person who rented the vehicle from Enterprise or how the driver of the vehicle then came to possess it out of the renter’s presence,
 
 i.e.,
 
 whether he did so with or without the renter’s permission. In the latter case, the driver would have had no more legitimate expectation of privacy in the vehicle than he would have in a stolen vehicle and defendant as his passenger would have no derivative right as a matter of La. Const, art. I, § 5 to assert a violation of those non-existent privacy interests.
 

 As to the former case, although a standard car rental form provides that only the person renting the vehicle or another authorized person may use the vehicle,
 
 see United States v. Boruff,
 
 909 F.2d 111, 114 (5th Cir.1990), it is not uncommon for persons to rent cars for the benefit of someone else or consent to the use of a vehicle he or she has rented. Even then, substantial authority exists that a person in possession and control of a car rented by someone else who has voluntarily delivered the vehicle to him for his own use has no standing to contest a search or seizure of the vehicle because he has no reasonable expectation of privacy.
 
 See, e.g., United States v. Seeley,
 
 331 F.3d 471, 472 (5th Cir.2003)(when defendant acquired possession of vehicle rented by his friend for his benefit because he lacked an appropriate credit card, under an agreement specifically limiting use of the vehicle to the renter or other authorized user, defendant “lacked standing to challenge the search of the rental car, as he (the sole occupant of the ear) was not |9the renter or an authorized driver.”);
 
 United States v. Wellons,
 
 32 F.3d 117, 119 (4th Cir.1994)(“Here, as the district court found, appellant, as an unauthorized driver of the rented car, had no legitimate privacy interest in the car and, therefore, the search of which he complains cannot have violated his Fourth Amendment rights.”);
 
 Boruff,
 
 909 F.2d at 117 (driver of rental car had no legitimate expectation of privacy in the vehicle when he was not listed as an authorized user on the rental agreement although he had permission of actual renter to drive the car as rental agreement prohibited use by an unauthorized driver and driver “was well aware of these restrictions when he took possession of the car and used it during the smuggling operation”);
 
 United States v. Obregon,
 
 748 F.2d 1371, 1375 (1984)(driver of a vehicle rented by someone else who delivered the vehicle to him for his use “did not have a legitimate expectation of privacy in the car he was driving and therefore he did not have standing to challenge the stop and later search of the car by the [police]”). Some contrary authority also exists.
 
 See United States v. Muhammad,
 
 58 F.3d 353, 355 (8th Cir.1995)(“Both parties agree that the defendant must present at least some evidence of consent or permission from the lawful owner/renter to give rise to an objectively reasonable expectation of privacy-”);
 
 United States v. Kye Soo Lee,
 
 898 F.2d 1034, 1038 (5th Cir.1990)(“In the instant case [defendants] were operating the truck with [the renter’s] permission. Indeed, [the renter] gave [defendants] the keys to the truck and entrusted the vehicle and its contents to [defendants]. On such facts as these, we are not prepared to disturb the district court’s finding that [defendants] had standing to contest the search of the truck’s cargo hold.”).
 

 However, even assuming
 
 arguendo
 
 that in some cases a person may acquire a
 
 *374
 
 legitímate expectation of privacy in a vehicle he uses with the permission of the | mperson who rented the car, despite restrictions placed on such use by the rental agreement, in the present case, the defense did not respond to the state’s showing that the driver was an unauthorized user of the rented vehicle. It thus made no attempt to demonstrate that the driver had, in fact, obtained the permission of the actual renter to use the vehicle out of the renter’s presence and thereby (arguably) acquired a reasonable expectation of privacy in the vehicle which the defendant, as his passenger, could assert derivatively under La. Const, art. I, § 5. Defendant therefore had no claim of any reasonable expectation of privacy in the vehicle and no basis for challenging the conduct of the police when Officer Diel entered the car without a warrant and opened the glove compartment to retrieve the paperwork for the vehicle, including the rental agreement with Enterprise.
 

 At that point, because the officers had lawfully stopped the vehicle and detained its occupants after observing the driver commit several traffic violations,
 
 Whren v. United States,
 
 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) (“[T]he decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.”), Officer Diel acquired probable cause to search any closed containers he found inside, as to which a passenger in a car might assert a reasonable expectation of privacy,
 
 but see Wellons,
 
 32 F.3d at 119 (defendant had no reasonable expectation of privacy in his luggage which he placed in the rental vehicle he drove without authority of rental company), when the officer smelled the distinct odor of marijuana emanating from the interior of the car.
 
 United States v. Carter,
 
 300 F.3d 415, 422 (4th Cir.2002) (“[The officer] clearly had probable cause to search the passenger compartment of [the] vehicle without a warrant, based on the burning marijuana he smelled as he approached the car.”);
 
 State v. Johnlouis,
 
 09-0235, p. 20 (La.App. 3rd Cir.11/4/09), 22 So.3d 1150, 1163 (“[The officer’s] detection of the odor of burnt marijuana emanating from the Defendant’s vehicle provided probable cause for the search of his vehicle.”);
 
 cf. California v. Acevedo,
 
 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (police do not need a warrant to search a closed container found within a lawfully stopped vehicle when the officers have probable cause for the search). We thereby accord due deference to the officer’s training and expertise,
 
 State v. Johnson,
 
 01-2081, p. 3 (La.4/26/02), 815 So.2d 809, 811 (police may “draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that ‘might well elude an untrained person’ ”) (quoting
 
 United States v. Arvizu,
 
 534 U.S. 266, 273, 122 S.Ct. 744, 750-51, 151 L.Ed.2d 740 (2002) (internal quotation marks and citations omitted)), despite the failure of drug dog Bronco to alert on the car.
 
 See United States v. Jodoin,
 
 672 F.2d 232, 236 (1st Cir.1982) (“[A] dog’s failure to react does not ... destroy the ‘probable cause’ that would otherwise exist. It is just another element to be considered.”);
 
 State v. Sanchez-Loredo,
 
 42 Kan.App.2d 1023, 220 P.3d 374, 378 (2009) (“The district court ... concluded that the failure of the drug dog to alert to possible contraband did not eliminate the probable cause that the facts of this case already supported, and we agree.”);
 
 Commonwealth v. Brown,
 
 924 A.2d 1283, 1289 (Pa.Super.2007) (“[T]he failure of a trained dog to respond to the alleged presence of narcotics is but one factor to be considered in adjudging whether the totality of the circumstances establishes probable cause. Given the rec
 
 *375
 
 ognized fallibility of the dogs’ sense of smell and its vulnerability to confusion by other ambient odors, a dog’s failure to alert will not defeat probable cause where other factors, viewed within the totality of the circumstances, continue to support it.”)(collecting cases);
 
 see also United States v. Davis,
 
 430 F.3d 345, 367 (6th Cir.2005) (Sutton, J., concurring in part and dissenting in part) (“These cases reveal a near universal recognition that a drug-sniffing dog’s failure to alert does not necessarily destroy probable cause, and ample reasons support this approach. Canine searches are not infallible, for one.”).
 

 Accordingly, Officer Diel lawfully retrieved the evidence in the present case when he unscrewed the false bottom of the bug spray can and pulled out the marijuana. The decision of the court of appeal is therefore reversed, the ruling of the trial court denying the motion to suppress is reinstated, and this case is remanded to the trial court for further proceedings consistent with the views expressed herein.
 

 DECISION OF THE COURT OF APPEAL REVERSED; JUDGMENT DENYING THE MOTION TO SUPPRESS REINSTATED; CASE REMANDED.
 

 [1]
 

 . Retired Judge Philip C. Ciaccio, assigned as Justice ad hoc, sitting for Chief Justice Catherine D. Kimball.
 

 [2]
 

 . Officer Diel gave a detailed accounting of the circumstances leading to the discovery of the marijuana in the bug spray can in an affidavit of probable cause executed in compliance with La.C.Cr.P. art. 230.2 and
 
 County of Riverside v. McLaughlin,
 
 500 U.S. 44, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). In the affidavit, the officer detailed that when he asked the driver of the car stopped for several traffic violations for his license and registration, the driver indicated that the vehicle was a rental from Enterprise and that he was not an authorized user. He directed the officer to the glove compartment of the vehicle for the paperwork. Diel also related how he then contacted Enterprise, confirmed that neither the driver nor the two passengers in the car had rented the vehicle or were authorized users, and that the company wanted to press charges. Diel also attempted to contact the
 
 *370
 
 renter named in the agreement without success. Although the affidavit appears in the district court record it was not introduced at the hearing on the motion to suppress and no stipulation was made as to its contents. By the time of the hearing, Diel had apparently left the New Orleans Police Department and the state of Louisiana, and so was not available to testify.
 

 When considering the correctness of the trial court’s ruling on the pre-trial motion, "this Court looks to the totality of the evidence presented at the motion to suppress hearing and the trial.”
 
 State v. Burkhalter,
 
 428 So.2d 449, 455 (La.1983). However, in the absence of a stipulation and formal introduction of Officer Diel’s affidavit at the hearing on the motion to suppress in lieu of the officer's testimony, we do not consider the affidavit part of the record for purposes of reviewing the trial court's ruling on the motion.