STATE OF LOUISIANA   *   NO. 2021-KA-0239

VERSUS      *

           COURT OF APPEAL

SHARNELL D. JOHNSON  *

           FOURTH CIRCUIT

         *

           STATE OF LOUISIANA

      \* \* \* \* \* \* \*

APPEAL FROM
CRIMINAL DISTRICT COURT ORLEANS PARISH
NO. 545-870, SECTION "F"
Honorable Robin D. Pittman, Judge
\* \* \* \* \* \*
**Judge Joy Cossich Lobrano**
\* \* \* \* \* \*
(Court composed of Judge Joy Cossich Lobrano, Judge Regina Bartholomew-Woods, Judge Dale N. Atkins)

*BARTHOLOMEW-WOODS, J., DISSENTS AND ASSIGNS REASONS*

Meghan Harwell Bitoun
LOUISIANA APPELLATE PROJECT
P.O. Box 4252
New Orleans, LA 70178-4252

   COUNSEL FOR DEFENDANT/APPELLANT

Jason Rogers Williams
District Attorney
G. Benjamin Cohen
Chief of Appeals
Brad Scott
Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY'S OFFICE
619 S. White Street
New Orleans, LA 70119

   COUNSEL FOR STATE OF LOUISIANA/APPELLEE

            **AFFIRMED.**

           **DECEMBER 29, 2021**

*JCL*
*DNA*
The defendant, Sharnell Johnson ("Defendant"), appeals the district court judgment which denied her motion to suppress evidence. For the following reasons, we affirm Defendant's conviction and sentence.

## PROCEDURAL HISTORY

Defendant was charged by bill of information with the illegal possession of tramadol, a synthetic opioid.[1] Defendant pled not guilty. Defendant filed a motion to suppress, which the district court denied after conducting a hearing. Defendant subsequently withdrew her plea of not guilty and pleaded guilty as charged, reserving her right to appeal the denial of the suppression motion pursuant to *State v. Crosby*, 338 So.2d 584 (La. 1976). Defendant was sentenced to three years at hard labor, with credit for time served. The sentence was suspended, and Defendant was placed on three years of active probation.[2] Defendant now appeals.

## STATEMENT OF FACTS

On May 3, 2019, Officer Michael Devezin was on patrol driving southbound on Basin Street with his partner, Officer Derrick Williams, when the officers detected the odor of marijuana coming from a gray Nissan Altima that had its driver's side window partially rolled down located in front of the police vehicle. Officer Devezin also observed that the vehicle's windows were heavily tinted. The officers initiated a traffic stop to investigate the source of the odor of marijuana, as well as the tint of the windows. The officers exited their vehicle and approached the Altima. As the officers approached the vehicle, the odor of marijuana grew stronger.

---

[1] La. R.S. 40:969(C)(2).

[2] Defendant was further ordered to spend three weekends in the "Weekend Warrior" program, made executory.

Officer Devezin asked the occupants, a male driver ("Driver") and Defendant, to exit the vehicle, with which directive they complied. Defendant exited the passenger side onto the sidewalk and left the passenger door open. Officer Devezin stated that he smelled a strong odor of marijuana. Driver admitted that he had smoked marijuana. Officer Devezin advised the occupants of their *Miranda* rights by reading the rights from a pre-printed card, and both were placed in handcuffs.

Officer Williams proceeded to search Driver's pockets and asked him if the vehicle contained any marijuana, which Driver denied. Following the search of Driver's person, the officer placed Driver in the back seat of the police vehicle.

The officers ran the occupants' names through the police database. Officer Devezin learned that Defendant had several open warrants in Orleans and Jefferson Parishes for simple battery, obscene phone calls, and threatening text messages, as well as several traffic violations, which he verified were valid. The officers released Driver from detention and removed the handcuffs, and Driver walked over to the passenger side of the vehicle where Defendant remained standing and the passenger door remained open.

Officer Devezin arrested Defendant on the outstanding warrants. When Officer Devezin explained to Defendant that she was under arrest and would be taken to jail, he asked her if she wanted to take her purse, which was laying on the passenger side floorboard of the vehicle. Rather than responding, Defendant asked if she could talk to Driver. Officer Devezin answered in the affirmative and stated that he would bring Defendant her purse, while simultaneously, Driver reached into the passenger side of the vehicle, removed the purse, and handed it to the

officer.[3] Officer Devezin asked Defendant if she had anything [illegal] in her purse, which she denied, and stated, "You can keep it."[4] She asked Driver if he would take her purse, and he responded that it was up to her. Defendant attempted to walk over to Driver. When the officer stopped her, she stated that she needed to tell Driver something, which the officer prohibited. Defendant explained to Driver that she had money in her purse, which he might need, imploring him to take her purse.

Officer Devezin commented that Driver "was acting like he did not want the purse," but eventually Driver acquiesced and agreed to take the purse. Officer Devezin explained to Defendant that because she was being arrested and the purse belonged to her, he would inventory the purse and then release it to Driver. Officer Devezin took the purse to the rear tailgate of the police vehicle and searched it. He removed a yellow zippered pouch from the purse which contained several tramadol pills. The officer confiscated the pills and handed the purse to Driver.

## ASSIGNMENT OF ERROR

In her sole assignment of error, Defendant contends the district court erroneously denied her motion to suppress evidence. She argues that the search of her purse went beyond the lawful scope of a search incident to an arrest.

## STANDARD OF REVIEW

An appellate court reviews a trial court's ruling on a motion to suppress under the abuse of discretion standard. *State v. Wells*, 08-2262, p. 5 (La. 7/6/10), 45 So.3d 577, 581. Although it is well-settled that an appellate court should review a trial court's ruling under a deferential standard with regard to factual

---

[3] Officer Devezin testified at the suppression hearing that he retrieved the purse from the vehicle. However, the officer's body camera footage clearly shows that Driver removed the purse from the vehicle and handed it to the officer.

[4] It is unclear whether Defendant was speaking directly to the officer or to Driver.

4

determinations, its legal findings are subject to *de novo* standard of review. *State v. Caliste*, 12-1548, p. 5 (La. App. 4 Cir. 6/14/13), 131 So.3d 902, 905-06 (citing *State v. Hunt*, 09-1589, p. 6 (La. 12/1/09), 25 So.3d 746, 751).

**DISCUSSION**

It is undisputed than an individual's constitutional protections from unreasonable searches and seizures are triggered during an investigative traffic stop. *United States v. Sharpe*, 470 U.S. 675, 682, 105 S.Ct. 1568, 1573, 84 L.Ed.2d 605 (1985). The law provides the stopping of a vehicle and its occupants constitutes a seizure under the law. *Delaware v. Prouse*, 440 U.S. 648, 653, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). In determining the legality of a traffic stop, a reviewing court must decide "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

The Louisiana Supreme Court, in *State v. Hunt*, reasoned that "[f]or a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity occurred or is about to occur, before stopping the vehicle. When an officer observes what he objectively believes is a traffic offense, the decision to stop the vehicle is reasonable, regardless of the officer's subjective motivation." *Id.*, 09-1589, pp. 8-9, 25 So.3d at 753 (internal citations omitted). Here, like in *Hunt*, Officer Devezin stopped the vehicle in which Defendant was a passenger because of the dark-tinted windows, thus, the stop itself was reasonable. *See also State v. Baugh*, 16-1201, p. 7 (La. App. 4 Cir. 1/18/17), 229 So.3d 520, 524 ("[G]iven the absence of a visible license plate and the illegally tinted windshield, the officer *could* have (at a minimum) conducted an

investigatory stop based on the traffic infraction.") (emphasis in original); *State v. Wyatt*, 99-2221, p. 2 (La. App. 4 Cir. 9/27/00), 775 So.2d 481, 483 ("[police officer] was therefore justified in stopping the car to further investigate a possible [window-tinting] infraction"); *State v. Smith*, 20-0039, p. 3 (La. App. 4 Cir. 4/8/20), 294 So.3d 1073, 1075, *writ granted, decision rev'd on other grounds*, 20-00711 (La. 10/20/20), 2020 WL 6154322 ("[police officer] stopped Defendant's vehicle because of the dark-tinted windows, a traffic offense, thus, the stop itself was reasonable at the outset."); *State v. Vessel*, 12-1543, p. 7 (La. App. 4 Cir. 1/10/14), 131 So.3d 523, 528 n. 5 ("[A]n infraction [for illegal tint] would provide an alternative basis for a traffic stop."); *State v. Pena*, 43,321, p. 7 (La. App. 2 Cir. 7/30/08), 988 So.2d 841, 847 ("Even if the trooper had later determined that the degree of tint on the windows was acceptable, he was justified in stopping the vehicle to further investigate a possible infraction.").

Defendant does not dispute that the stop was reasonable. Even if we were to find the stop was unreasonable, Officer Devezin's discovery of an outstanding warrant attenuated the taint of an initial impermissible encounter, making any evidence lawfully seized during the stop admissible. *See State v. Hill*, 97-2551, p. 5 (La. 11/6/98), 725 So.2d 1282, 1285. *See also Utah v. Strieff*, 579 U.S. 232, 238-42, 136 S.Ct. 2056, 2061-63, 195 L.Ed.2d 400 (2016).

Defendant argues that the search of her purse was illegal under *Arizona v. Gant,* 556 U.S. 332, 129 S.Ct. 1710, 173 L.Ed.2d 485 (2009). In *Gant,* the Supreme Court narrowed the scope of the search-incident-to-arrest doctrine. *Gant* held that a search of a car incident to arrest is permitted only in two instances: "if the arrestee is within reaching distance of the passenger compartment

6

at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 556 U.S. at 351, 129 S.Ct. at 1723.[5]

Defendant argues that the search of her purse was unconstitutional under *Gant* because she did not have access to the purse given the fact that she was handcuffed and positioned on the sidewalk away from the vehicle at the time of the search. Further, there is no indication in the record that the officers had reason to believe that the purse contained evidence of any of the offenses for which she was arrested.

The State counters that, prior to the search, Driver had removed the purse from the vehicle and handed it to Officer Devezin, and at the time the search was undertaken, Defendant was standing near the officer, and Driver was no longer handcuffed and had complete freedom of movement. The State further asserts that it was reasonable for the officer to search the purse before handing it to Driver, given Defendant's suspicious behavior in insisting that Driver take the purse despite his initial unwillingness to do so.

We agree with the State's position. At the time of the search, Defendant and Driver were within reaching distance of the purse. Accordingly, we find that the search of Defendant's purse was authorized pursuant to *Gant* as incident to an arrest. We further find a second basis for upholding the legality of the search, namely, that the search was lawful under the automobile exception to the warrant requirement. For the reasons explained later in this opinion, upon the detection of the odor of marijuana, Officer Devezin acquired probable cause to suspect that the

---

[5] A *Gant* analysis may not be warranted in the case *sub judice* because Defendant's purse was not inside the automobile at the time of the search and the unusual movements of the purse. However, we are inclined to perform such an analysis out of an abundance of caution and completion because the purse was inside the vehicle immediately before the search but was removed from the vehicle by Driver and handed to Officer Devezin, who was standing near Defendant when he searched the purse.

7

vehicle contained evidence of a narcotics violation and, pursuant to the automobile exception, was authorized to conduct a warrantless search of every part of the vehicle and its contents that might conceal evidence of illegal drug activity, including Defendant's purse.

The dissent finds that the justifications underlying the search incident to arrest exception, namely, officer safety and evidence preservation, are absent in the case *sub judice* since "Officer Devezin did not believe [the purse] contained anything that was a threat to his safety"[6] and "it would be unreasonable to conclude that [Defendant's] purse contained evidence of the offense for which [Defendant] was arrested" and concludes that "therefore, the facts of this case do not fall within the narrow scope of the search incident to arrest exception." The dissent presupposes that, to be lawful, a search incident to arrest must be motivated by particularized concerns for officer safety or evidence preservation. The caselaw does not support such a requirement.

The touchstone of the analysis under the Fourth Amendment is always the reasonableness in all circumstances of the particular governmental invasion of a citizen's personal security. *State v. Kelley,* 05-1905, pp. 4-5 (La. 7/10/06), 934 So.2d 51, 54 (*per curiam*) (citation omitted). The reasonableness of any intrusion on an individual's privacy interests depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers. *Id.*, 05-1905, p. 5, 934 So.2d at 54 (citation omitted). The inquiry is a purely objective one that does not take into account the subjective

---

[6] Officer Devezin's subjective belief as to the contents of the purse is not relevant to the determination of the legality of the search of the purse. Nevertheless, we cannot say that Defendant's awkward behavior after Officer Devezin asked her if she wanted her purse would not have caused a reasonable police officer to suspect that the purse contained a weapon.

intent or beliefs of the police. *Id.* (citations omitted). "[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action." *State v. Butler*, 12-2359, p. 3 (La. 5/17/13), 117 So.3d 87, 89 (quoting *Whren v. United States,* 517 U.S. 806, 813, 116 S.Ct. 1769, 1774, 135 L.Ed.2d 89 (1996)).

In *Chimel v. California*, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969), the Supreme Court established that, incident to a lawful custodial arrest, the arresting officer could search the arrestee and the area within the arrestee's immediate control. The two justifications for the authority to search were officer safety and preservation of evidence. *Id.*, 395 U.S. at 763, 89 S.Ct. at 2040. The area within an arrestee's immediate control was construed to "mean the area from within which he might gain possession of a weapon or destructible evidence." *Id.*

In *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), the Supreme Court held that the authority to "search as incident to an arrest was a 'bright-line rule,' which was based on the concern for officer safety and destruction or loss of evidence, but which did not depend in every case upon the existence of either concern." *Knowles v. Iowa*, 525 U.S. 113, 118, 119 S.Ct. 484, 488, 142 L.Ed.2d 492 (1998). In *Robinson,* a police officer "effected a full-custody arrest" after stopping a vehicle based upon probable cause to believe that the driver was operating a motor vehicle with a revoked operator's permit, and then searched the driver even though the officer did not suspect that the driver was armed. *Robinson*, 414 U.S. at 220-23, 94 S.Ct. at 469-71. The Supreme Court explained its holding: "A police officer's determination as to how and where to

search the person of a suspect whom he has arrested is necessarily a quick ad hoc judgment...." and "[t]he authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect." *Id.*, 414 U.S. at 235, 94 S.Ct. at 477. "[T]he absence of probable fruits or further evidence of the particular crime for which the arrest is made" did not narrow the scope of the search incident to arrest. *Id.*, 414 U.S. at 234, 94 S.Ct. at 476. The court held: "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification.... [I]n the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment." *Id.*, 414 U.S. at 235, 94 S.Ct. at 477. Under these principles, the arresting officer was entitled to search the driver, examine the crumpled cigarette package found in his pocket, and to seize the heroin capsules found inside. *Id.*, 414 U.S. at 236, 94 S.Ct. at 477.

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court considered *Chimel*'s application to the automobile context. The court determined that "the area within the immediate control of the arrestee" in the vehicular context was the vehicle's passenger compartment. *Id.*, 453 U.S. at 460, 101 S.Ct. at 2864. It stated the rule that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a

10

contemporaneous incident of that arrest, search the passenger compartment of that automobile." *Id.* (footnotes omitted).[7]

*Thornton v. U.S.*, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), extended *Belton* to encompass searches incident to the arrest of persons who were recent occupants of vehicles. The Supreme Court stated: "In all relevant aspects, the arrest of a suspect who is next to a vehicle presents identical concerns regarding officer safety and the destruction of evidence as the arrest of one who is inside the vehicle." *Thornton*, 541 U.S. at 621, 124 S.Ct. at 2131. It concluded that "*Belton* governs even when an officer does not make contact until the person arrested has left the vehicle." *Id.*, 541 U.S. at 617, 124 S.Ct. at 2129.

In *Gant*, *supra*, a divided Supreme Court rejected a "broad reading" of *Belton*'s bright-line rule that would permit vehicular searches incident to arrest even where the arrestee was safely in custody and could not possibly retrieve weapons or evidence from his vehicle at the time of the search. *Id.*, 556 U.S. at 341 -47, 129 S.Ct. at 1718-21. "To read *Belton* as authorizing a vehicle search incident to every recent occupant's arrest would thus untether the rule from the justifications underlying the *Chimel* exception - a result clearly incompatible with our statement in *Belton* that it 'in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to

---

[7] *Belton* also established the corollary rule "that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. *Id.*, 453 U.S. at 460-61, 101 S.Ct. at 2864 (citations and footnote omitted). The court explained that the word "container" "denote[d] any object capable of holding another object [and] thus include[d] closed or open glove compartments, consoles, or other receptacles located anywhere within the passenger compartment, as well as luggage, boxes, bags, clothing, and the like." *Id.*, 453 U.S. at 460, n. 4, 101 S.Ct. at 2864. The Court clarified that "[s]uch a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have." *Id.*, 453 U.S. at 461, 101 S.Ct. at 2864.

lawful custodial arrests.' " *Id.*, 556 U.S. at 343, 129 S.Ct. at 1719 (quoting *Belton*, 453 U.S. at 460, n. 3, 101 S.Ct. at 2864). "Construing *Belton* broadly to allow vehicle searches incident to any arrest would serve no purpose except to provide a police entitlement, and it is anathema to the Fourth Amendment...." *Id.* 556 U.S. at 347, 129 S.Ct. at 1721.

The court in *Gant* held that "the *Chimel* rationale authorizes police to search a vehicle incident to a recent occupant's arrest only when the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* 556 U.S. at 343, 129 S.Ct. at 1719 (footnote omitted). It stated "[t]he safety and evidentiary justifications underlying *Chimel*'s reaching-distance rule determine *Belton*'s scope" and it made clear that "*Belton* does not authorize a vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Id.* 556 U.S. at 335, 129 S.Ct. at 1714. Consequently, *Belton* did not authorize a vehicular search of Gant's car since he was handcuffed and "locked in the back of a patrol car" when "police officers searched his car and discovered cocaine in the pocket of a jacket on the backseat." *Id.*

The Supreme Court proceeded to recognize an alternative justification permitting vehicular searches incident to arrest even if an arrestee was secured in custody: "Although it does not follow from *Chimel,* we also conclude that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest

12

might be found in the vehicle.' " *Id.*, 556 U.S. at 343, 129 S.Ct. at 1719 (citing *Thornton,* 541 U.S. at 632, 124 S.Ct. at 2137 (Scalia, J., concurring in judgment).[8]

*Gant* authorizes the search of a vehicle incident to arrest if one of the two instances justifying a search is present. No particularized suspicion to believe the person arrested might destroy evidence or reach for a weapon need be present to justify a search incident to arrest. *State v. Warren*, 05-2248, p. 14 (La. 2/22/07), 949 So.2d 1215, 1227 ("The potential dangers lurking in all custodial arrests make warrantless searches of items within the immediate control area reasonable without requiring the arresting officer to calculate the probability that weapons or destructible evidence may be involved.") (internal quotation marks and citations omitted); *Knowles,* 525 U.S. at 118, 119 S.Ct. at 488 ("[T]he authority to conduct a full field search as incident to an arrest [is] based on concern for officer safety and destruction or loss of evidence, but which [does] not depend in every case upon the existence of either concern."); *Robinson*, 414 U.S. at 235, 94 S.Ct. at 477 ("[O]ur more fundamental disagreement with the Court of Appeals arises from its suggestion that there must be litigated in each case the issue of whether or not there was present one of the reasons supporting the authority for a search of the person incident to a lawful arrest. . . . The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect. A custodial arrest of a suspect based on probable cause is

---

[8] In his separate opinion in *Thornton*, Justice Scalia had stated: "If *Belton* searches are justifiable, it is not because the arrestee might grab a weapon or evidentiary item from his car, but simply because the car might contain evidence relevant to the crime for which he was arrested." *Thornton*, 541 U.S. at 629, 124 S.Ct. at 2135 (Scalia, J., concurring in judgment).

a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification."). *Compare Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (requiring that officers must have a reasonable articulable suspicion to believe a suspect may be armed and dangerous before conducting a limited pat-down search for weapons.).

We further find that the search was authorized under the automobile exception to the warrant requirement. The *Gant* Court recognized the continuing viability of the "automobile exception" to the warrant requirement, noting that "[i]f there is probable cause to believe a vehicle contains evidence of criminal activity, *United States v. Ross,* 456 U.S. 798, 820-821, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. . . . *Ross* allows searches for evidence relevant to offenses other than the offense of arrest[.]" *Gant*, 556 U.S. at 347, 129 S.Ct. at 1721.

Courts, including this Court, have consistently held that the odor of marijuana emanating from a vehicle provides officers with sufficient probable cause to believe that contraband relating to marijuana is located in the vehicle, and, based on that probable cause, to conduct warrantless searches of vehicles. *See State in Interest of A.H.*, 10-1673, p. 8 (La. App. 4 Cir. 4/20/11), 65 So.3d 679, 684-85; *State v. Matthews*, 15-1281, p. 8 (La. App. 1 Cir. 2/26/16), 191 So.3d 1080, 1085 n. 2; *State v. Lewis*, 07-1183, pp. 11-12 (La. App. 3 Cir. 4/2/08), 980 So.2d 251, 259; *State v. Turner*, 12-855, p. 9 (La. App. 5 Cir. 5/16/13), 118 So.3d 1186, 1193. *See also State v. Waters*, 00-0356, p. 7 (La. 3/12/01), 780 So.2d 1053, 1058 (*per curiam*); *State v. Allen*, 10-1016, p. 1 (La. 5/7/10), 55 So.3d 756, 756 (*per curiam*).

Police officers who have legitimately stopped an automobile and who have probable cause to believe that contraband is concealed somewhere within it, may

14

conduct a warrantless search of the vehicle as thoroughly as a magistrate could authorize. The scope of the warrantless search of an automobile is not defined by the nature of the container in which the contraband is secreted, but rather, is defined by the object of the search and the places in which there is probable cause to believe it may be found. That is, if probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *See Ross*, 456 U.S. at 824-25, 102 S.Ct. at 2172-73. *See also California v. Acevedo*, 500 U.S. 565, 570, 111 S.Ct. 1982, 1986, 114 L.Ed.2d 619 (1991) (holding that the police do not need a warrant to search a closed container found within a lawfully stopped vehicle when the officers have probable cause for the search); *A.H.*, 10-1673, p. 8, 65 So.3d at 684-85 (holding that officers obtained probable cause to search a Pringles can found inside a vehicle once they smelled the distinct odor of marijuana emanating from the interior of the car); *State v. Lacrosse*, 19-599, pp. 4-5 (La. App. 5 Cir. 1/7/20), --- So.3d ---, 2020 WL 88838, *3 (the smell of fresh marijuana provided the officer with sufficient probable cause to conduct a warrantless search of the entire car, including the trunk and the backpack located inside the trunk).

The Louisiana Supreme Court decided an analogous case after *Gant* that is persuasive. In *State v. Jackson,* 09-1983 (La. 7/6/10), 42 So.3d 368 (*per curiam*), the defendant filed a motion to suppress, citing *Gant.* The defendant argued that because the occupants of the vehicle were removed some distance away from the vehicle, the officer's warrantless entry of the vehicle exceeded the scope of a search incidental to a lawful arrest of the driver for a traffic violation and was otherwise unsupported by any reasonable belief the vehicle contained evidence of a crime. *Id.*, 09-1983, p. 3, 42 So.3d at 370. The Court reinstated the trial court's

ruling denying the motion to suppress. The Court found the officers lawfully stopped the vehicle after observing several traffic violations and the officer obtained "probable cause to search any closed containers he found inside ... when the officer smelled the distinct odor of marijuana emanating from the interior of the car." *Id.*, 09-1983, p. 10, 42 So.3d at 374.

In the case *sub judice*, Officer Devezin obtained probable cause to search the car in which Defendant was riding as a passenger, including any containers therein capable of concealing evidence of narcotics use, once he smelled the odor of marijuana emanating from the interior of the car, which was collaborated when Driver admitted to smoking marijuana. Accordingly, we find that the search of Defendant's purse was constitutional under the automobile exception.

The dissent finds that "the automobile exception to the warrant requirement did not justify the warrantless search in this case," relying on Municipal Code § 54-28(1). Municipal Code § 54-28(1) directs that an officer issue a written summons, in lieu of effecting a custodial arrest, when citing a person solely for possession of marijuana, unless one of five exceptions apply.[9]

---

[9] Municipal Code §54-28(1) (M.C.S., Ord. No. 23128, § 2, 6-19-08) provides:

> (1) An officer shall issue a written summons and may not make a custodial arrest when citing a person solely for a violation of this chapter, except when one of the following circumstances exists:
>
> a. The person does not possess identification issued by any municipal, state, territorial, federal, or other governmental authority within the United States; or
>
> b. The person makes a statement that indicates an intent to disregard the summons or refuses to sign the summons; or
>
> c. The person acts in a violent or destructive manner or makes a statement indicating that he or she intends to inflict injury to self or another or damage to property; or

The dissent concludes that "[u]pon [Driver's] admission that he had indeed smoked marijuana," the officer would have been limited to issuing a summons since "there was no basis for a search of the vehicle or any closed containers inside the vehicle . . . because none of the exceptions in the Municipal Code applied to the situation."

Defendant did not present this argument to the district court. It is settled that a new basis for an objection may not be urged for the first time on appeal, and the rule encompasses a new basis for suppressing evidence urged for the first time on appeal as a reason for overturning a trial court's denial of a motion to suppress.

---

d. The person is a habitual offender, defined as any individual with a criminal history of two or more felony convictions or five or more felony or municipal arrests for any offense; or

e. Based on the circumstances, an officer determines that it is absolutely necessary to make an arrest.

Municipal Code §54-28(1) was amended on December 17, 2020, and now provides:

An officer shall issue a written summons and may not make a custodial arrest when citing a person solely for a state or municipal misdemeanor violation, except when one of the following circumstances exists:

(a) The officer is unable to determine the identity of the person; or

(b) The person makes a statement that indicates an intent to disregard the summons or refuses to sign the summons; or

(c) The person acts in a violent or destructive manner or makes a statement indicating that he or she intends to imminently inflict injury to self or another or damage to property; or

(d) The person is a habitual offender, defined as any individual with a criminal history of two or more felony convictions, or five or more convictions for any offense; or

(e) The officer determines that exigent circumstances absolutely necessitate a custodial arrest to protect public safety, and the officer's supervisor is consulted and approves the arrest.

Municipal Code §54-28(1) (M.C.S., Ord. No. 28558, § 1, 12-17-20).

*Butler*, 12-2359, p. 4, 117 So.3d at 89 (citations omitted). Thus, this issue is not properly before the Court. Absent this procedural bar, we nevertheless find this argument is without merit.

While Municipal Code § 54-28(1) prohibits an officer from making a custodial arrest for certain offenses (unless one of the exceptions applies), thereby rendering a search incident to arrest for such offenses irrelevant, the local ordinance has no impact on an officer's right to conduct a warrantless search based on probable cause under the automobile exception. The search at issue was not conducted incidental to an arrest for possession of marijuana. Rather, Officer Devezin conducted the search to locate and preserve evidence of a suspected narcotics violation. The search was supported by probable cause, given the officer's detection of the odor of marijuana and Driver's admission he had smoked marijuana, and a warrantless search was therefore authorized under the automobile exception to the warrant requirement.

## CONCLUSION

For the reasons stated above, we affirm Defendant's conviction and sentence finding that Defendant's motion to suppress was properly denied.

**AFFIRMED.**