Judgment rendered July 23, 2025.

No. 55,736-KA
No. 55,954-KA
(Consolidated Cases)


ON REHEARING


COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA


* * * * *

STATE OF LOUISIANA                              Appellee

versus

CLAY LANDIS RIGGS                               Appellant

* * * * *

On Rehearing
Originally Appealed from the
Eighth Judicial District Court for the
Parish of Winn, Louisiana
Trial Court No. 45,329 and 45,550

Honorable Anastasia Stacy Wiley, Judge


* * * * *

LOUISIANA APPELLATE PROJECT            Counsel for Appellant
By:  Peggy J. Sullivan


CLAY LANDIS RIGGS                               Pro Se


RICHARD CHRISTOPHER NEVILS            Counsel for Appellee
District Attorney

STEVEN D. CREWS
MATTHEW S. KELLEY
COLE B. SMITH
Assistant District Attorneys

* * * * *


Before STONE, STEPHENS, THOMPSON, HUNTER,
and ELLENDER, JJ.


STEPHENS, J., concurs with written reasons.


ELLENDER, J., concurs in part and dissents in part, with written reasons.


THOMPSON, J., concurs in part and dissents in part for reasons assigned by
J. Ellender.

**STONE, J.**

This consolidated[1] criminal case has returned to us on remand from the Louisiana Supreme Court. *State v. Riggs*, 25-00299 (La. 5/29/25), --So. 3d--, 2025 WL 1527023.

The defendant is Clay L. Riggs ("Riggs"). This case was originally decided in the Eighth Judicial District Court, the Honorable Anastasia Wiley presiding. After the trial court denied his motion to suppress the evidence,[2] Riggs was convicted of aggravated flight from an officer pursuant to La. R.S. 14:108.1 and subsequently was adjudicated a fourth felony offender pursuant to La. R.S. 15:529.1. Thereupon, the trial court sentenced Riggs to life imprisonment.

We previously issued an opinion in this appeal that addressed only matters concerning Riggs's habitual offender sentencing (i.e., docket no. 55954-KA). That opinion affirmed Riggs's conviction without addressing his assignment of error in a brief his attorney separately filed in docket no. 55736-KA on February 8, 2024. That brief argues Riggs's motion to suppress should have been granted. Additionally, we failed to address Riggs's pro se appellate brief. Due to the remand, we have recalled our initial opinion in this appeal and now replace it with the instant opinion. However, the outcome of the case remains unchanged; this new opinion is essentially identical to the initial one, except that we have added

---

[1] Riggs appealed his initial conviction and sentence in this court's docket no. 55736-KA. Subsequently, based on that conviction, he was adjudicated a fourth felony offender and was resentenced accordingly; he separately appealed his enhanced sentence in this court's docket no. 55954-KA.

[2] The trial court heard the motion on October 24, 2022, and signed the order denying it that same day.

explanations as to why the trial court was right in denying the motion to suppress, and why Riggs's pro se assignments of error lack merit.

## FACTS AND PROCEDURAL HISTORY

On January 30, 2022, the arresting officer was parked in his marked patrol vehicle in a "hole" in the woods watching traffic from a concealed viewpoint. The officer saw and heard Riggs's SUV drive past and followed Riggs's vehicle because he heard its exhaust making a "very, very loud noise." This indicated to him that Riggs's vehicle had an illegally modified exhaust system. After the arresting officer followed Riggs for a minute or two, Riggs abruptly accelerated to 60 miles per hour in a 25-mile-per-hour zone. At this point the officer activated his lights and began pursuit. Riggs did not stop, but instead, led the officer on a "high-speed"[3] chase on rural roads, which were largely unpaved and were subject to varying speed limits of no more than 30 miles per hour. The video of the chase demonstrates that it lasted over 19 minutes, involved slogging through muddy stretches, and wound through wooded areas. The chase ended when Riggs attempted to cross a narrow wooden bridge in his SUV, but Riggs's vehicle fell off the bridge and flipped into the bayou. (Riggs did all of this with three passengers in his vehicle.) The officer testified that he identified Riggs as the driver when Riggs made a turn during the chase, and when Riggs was pulled from the driver's seat at the conclusion of the chase.

Riggs filed a timely motion to suppress, which the trial court denied. Riggs was convicted at trial. He was later adjudicated a fourth felony offender and sentenced as such. After a presentence investigation (in which

_____

[3] The officer's dash cam footage shows that speeds varied widely, but only briefly exceeded 70 miles per hour.

Riggs refused to participate), the trial court sentenced Riggs to life in prison. The trial court issued written reasons for the sentence, noting Riggs's extensive criminal history, past failures in probation, lack of intent to stop committing crimes, and the fact that there were others present in the vehicle with him during the chase.

In our original opinion, we addressed only one assignment of error: that Riggs's sentence is constitutionally excessive. Below, this opinion will: (1) address Riggs's counseled assignment of error, i.e., that his conviction is invalid because it depends on evidence that should have been suppressed; (2) address Riggs's pro se assignments of error; and (3) finally, restate the original opinion reducing Riggs's sentence to twenty years. He did not file a motion to reconsider the sentence.

**MOTION TO SUPPRESS (COUNSELED)**

As previously stated, the defendant filed a motion to suppress in the trial court. The trial court denied the motion. On appeal, Riggs argues that the officer who initiated the chase lacked reasonable suspicion to believe that Riggs's vehicle had an illegal exhaust system, and therefore lacked justification to stop Riggs. As explained below, this argument lacks merit.

In *State v. Robinson*, 52,974 (La. App. 2 Cir. 3/18/20), 293 So. 3d 193, 201, *writ denied*, 20-00525 (La. 10/20/20), 303 So. 3d 315, we explained the constitutional boundaries on searches and seizures by law enforcement:

> The right of every person to be secure in his person, house, papers, and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution. However, that declaration of rights "presupposes that there must be an invasion of [the] right

3

to privacy before there can be an unreasonable *search*." *State v. Jackson,* 09-1983 (La. 7/6/10), 42 So. 3d 368. (Emphasis added). Simply stated, if there has been no "search" or "seizure," as defined by the constitutional jurisprudence, then there cannot be a constitutional violation. With regard to whether a search has occurred, the inquiry is whether there was "an objectively reasonable expectation of privacy in the area." *Id*.

In *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547 (1991), the United States Supreme Court held that an individual is not "seized" within the meaning of the Fourth Amendment until that individual either submits to the police show of authority or is physically contacted by the police. In *State v. Tucker*, 626 So. 2d 707, 712-13 (La.), *opinion reinstated on reh'g*, 626 So. 2d 720 (La. 1993), the Louisiana Supreme Court adopted *Hodari D.*, but also held that the Louisiana constitution provides more protection than its federal counterpart:

> Today we adopt *Hodari D.*'s definition for determining when an "actual stop" has occurred. We additionally adopt a standard for determining [under the Louisiana constitution's additional protection] the "imminency" of an actual stop which focuses on whether an "actual stop" is "virtually certain" to result from the police encounter. To the extent this decision conflicts with our prior decisions, they are hereby overruled.

*Id. Tucker* articulated the additional protection as follows:

> In determining whether an "actual stop" of an individual is "imminent," we find that the focus must be on the degree of certainty that the individual will be "actually stopped" as a result of the police encounter…It is only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is *virtually certain,* that an "actual stop" of the individual is "imminent."

*Id. Tucker* also provided a list of factors a court may consider in determining when an imminent actual stop was virtually certain:

4

[T]he following factors may be useful in assessing the extent of police force employed and determining whether that force was *virtually certain* to result in an "actual stop" of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.

*Id.*

In relevant part, La. C. Cr. P. art. 703 provides:

A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
...
C. A motion filed under the provisions of this Article must be filed in accordance with Article 521,[4] unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
E. (1) An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief. The state may file an answer to the motion.
…
F. A ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial. Failure to file a

---

[4] In relevant part, La. C. Cr. P. art. 521 states:

 A. Pretrial motions shall be made or filed within thirty days after receipt of initial discovery, unless a different time is provided by law or fixed by the court upon a showing of good cause why thirty days is inadequate.
B. Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.

motion to suppress evidence in accordance with this
Article prevents the defendant from objecting to its
admissibility at the trial on the merits on a ground
assertable by a motion to suppress.

In *Robinson*, *supra*, we also explained the procedural and evidentiary

aspects of enforcing these constitutional freedoms:

Generally, if evidence was derived from an unlawful
search or seizure, the proper remedy is exclusion of the
evidence from trial. On a motion to suppress evidence on
the ground that it was unconstitutionally obtained, the
prosecution has the burden of proving the admissibility of
any evidence seized without a warrant. La. C.Cr.P. art.
703(D).
The standard of review applicable to a trial court's
decision on a motion to suppress is bifurcated as follows:
(1) legal findings or conclusions are subject to *de novo*
review; and (2) findings of fact are subject to manifest
error review. Manifest error review requires great
deference to the factfinder's decisions regarding witness
credibility.

*Id.*

By the time that Riggs unintentionally cast himself into the bayou, the

officers *already* had acquired the evidence needed to convict Riggs of

aggravated flight from an officer. Riggs was not virtually certain to

imminently be stopped until he had *already* been recorded on video speeding

and committing aggravated flight from an officer. The exclusionary

sanction, by definition, only excludes evidence *derived from* an unlawful

arrest, detention, search, or seizure. Given the facts of this case, it is

logically impossible that the testimony and video *of what Riggs did before*

*his vehicle was stopped* was derived from the stop of his vehicle. That is so

under the rule of *Hodari D.*, *supra*, and the heightened protection under

*Tucker*, *supra*. Thus, even assuming for the sake of argument that the

officer lacked reasonable suspicion at the time he began to follow Riggs, the trial court was correct in denying the motion to suppress such evidence.

Furthermore, the officer had probable cause to arrest Riggs by the time the arrest was actually made as the officer had quite personal knowledge that Riggs was speeding and committing flight from the arresting officer himself. Riggs's arrest was lawful. Therefore, any evidence derived from the arrest, such as confirming Riggs's identity as the driver, is not subject to suppression under either the federal constitution or Louisiana constitution.

Additionally, even if the exclusionary sanction somehow magically expanded to cover evidence derived from an officer's merely following a vehicle without reasonable suspicion, it still would not apply here. La. R.S. 32:352 prohibits excessively loud mufflers. In the motion hearing, the officer testified that, based on his own hearing, the muffler noise was excessive—it was "emitting a very, very, loud noise" which caused him to suspect it had been modified. The trial court could easily have accepted the officer's testimony without committing manifest error. The defense brief to this court cites *trial testimony* of Amy Jordan, who was a passenger during the chase and often drove the vehicle herself. She said the muffler was not loud that night. The defense has failed to cite any such testimony given during the *motion hearing*. Even if the defendant had done so, the court would not have committed a manifest error in rejecting this testimony in favor of the officer's testimony. Therefore, the trial court would not have erred in affirmatively finding the officer had reasonable suspicion for merely following Riggs's vehicle (which, again, did not constitute an arrest or a detention). This argument is without merit and is rejected.

However, out of an overabundance of caution, we explain further: Riggs seems to potentially argue that the officers pulling him out the driver seat of his vehicle—and thereby seeing his face and confirming that he was the driver—was somehow an unlawful search of his vehicle or seizure of him.

While there is a recognized constitutional right to privacy in one's vehicle, that cannot support an argument that the identification of Riggs as the driver was the product of an unlawful search or arrest. Neither an arrest warrant nor a search warrant is needed to arrest a felony suspect from his vehicle; probable cause alone is sufficient. This reality is embedded in our law at the presuppositional level,[5] and is codified in La. C. Cr. P. art. 213(A)(1): Because the officers had the authority to arrest the driver of the Riggs vehicle without a warrant, they had the right to see his face. For this reason alone, this argument is without merit.

However, we also note that the emergency exception to the warrant requirement is applicable here:

> One carefully defined exception to the warrant requirement which is recognized throughout the United States is the so called "emergency exception". *Mincey v.*

---

[5] *State v. McGraw*, 43,778 (La. App. 2 Cir. 12/10/08), 1 So. 3d 645, 655, *writ denied*, 2009-0317 (La. 11/6/09), 21 So. 3d 297; *New York v. Belton*, 453 U.S. 454, 454, 101 S. Ct. 2860, 2861, 69 L. Ed. 2d 768 (1981); *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009); *State v. Monroe*, 49,365 (La. App. 2 Cir. 11/19/14), 152 So. 3d 1011; *Pennsylvania v. Mimms*, 434 U.S. 106, 107, 98 S. Ct. 330, 331 (1977) (requiring driver to get out of car as part of a traffic stop does not violate the Fourth Amendment; (requiring driver to get out of car as part of a traffic stop does not violate Article 1 Section 5 of the Louisiana Constitution).

It is a strong general rule, if not an absolute rule, that no arrest warrant is required for a felony suspect unless he is to be arrested inside his home. *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371 (1980) (warrant is required to arrest someone inside his home); *State v. Walker*, 06-1045 (La. 4/11/07) 953 So.2d 786 (no warrant required to arrest someone from the residence of a third party); *United States v. Watson*, 423 U.S. 411, 96 S. Ct. 820 (1976) (no warrant required to arrest felony suspect inside restaurant open to the public).

*Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978). Under the emergency exception, police officers may enter a dwelling without a warrant to render emergency assistance to a person reasonably believed to be in distress and in need of such assistance.

*State v. Murphy*, 465 So. 2d 811, 815 (La. App. 2 Cir. 1985). The emergency exception applies because the officers were not required to obtain any warrant before rescuing Riggs and his passengers/victims from drowning in the bayou. Thus, even if we pretend that a warrant was otherwise required, this argument still would fail.

## RIGGS'S PRO SE ASSIGNMENTS OF ERROR

Riggs filed a pro se brief wherein he introduces himself as "Clay Landis Johnson who is a Pre-Amble Non-Franchised Private American Man."[6]

In his assignments of error, Riggs conjures mountains of anti-logic and legal nonsense as support for his claims: (1) that he is not a person, natural or juridical, but instead is a sovereign entity, and therefore, is not subject to the law except in that his constitutional rights are being violated; (2) that the Suburban he was driving is not a "motor vehicle," and therefore, he cannot have been the "driver" or "operator" thereof; (3) he did not ask for any of the benefits that the government provides to all, and therefore, he is not subject to the law; and (4) somehow, Uniform Commercial Code ("UCC") Article 9 militates in favor of his appeal. These are all of Riggs's enumerated assignments of error. As to these claims, it suffices to say that being subject to objective reality and to the law is not optional for anyone,

---

[6] Riggs later styles himself as a "Private Natural Man," "The Natural Petitioner," "He," and as the "Secured Party" in connection with his argument regarding Uniform Commercial Code Article 9.

including Clay Riggs; nonetheless, this Court endeavors to address his assignments of error with more specificity. Additionally, (5) Riggs makes a substantive argument that is not specially enumerated as an assignment of error. This argument is addressed at the end of this portion of this opinion.

In his first assignment of error, Riggs denies his/its own "corporate existence" yet contends that his constitutional rights have been violated in this case. This quote seems to reflect the linchpin of his argument:

> The creation of the ENTITY/PERSON CLAY LANDIS RIGGS that is associated with the Government owned Social Security Card Number 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 was created by Bessie Leona Riggs by false information on birth registry record in Colorado Springs Colorado on or about the 19th day of December 1970.

That is, Riggs maintains he is not the entity/person that was "created" by the filing of the false birth certificate. A person is not created by the filing of a birth certificate. The entity/person referred to as Clay Riggs also seems to contend that, because he has a fraudulent birth certificate and that his/its social security number was issued by fraud,[7] he/it is not a "person," and, therefore, is not subject to the law. This is a contradiction: if the entity/person referred to as Clay Riggs were not a person (natural or juridical), he/it could not have constitutional rights. Again, in objective reality, the entity/person referred to as Clay Riggs does exist, is a human being (a "natural person"), is fully subject to the law, and has the full protection of the constitution. However, Due Process does not require the

---

[7] Riggs alleges his mother: (1) birthed him with a midwife, not at a hospital; (2) was disabled at the time of his infancy; and (3) therefore gave him to his aunt to raise as her own child. He alleges that his aunt thus falsified the birth certificate and social security information to establish herself as the biological mother in the eyes of the government.

10

state to litigate whether the entity/person referred to as Clay Riggs, a live human being, is a person or not.

The entity/person referred to as Clay Riggs further argues that because he/it did not agree to be subject to the law or request any of the benefits which the government provides to everyone, he/it is not subject to the law. Again, if the entity/person referred to as Clay Riggs were not subject to the law, then the law would not provide him/it with any rights, constitutional or otherwise. The law applies to the entity/person referred to as Clay Riggs without his/its consent.

In the entity/person referred to as Clay Riggs's second assignment of error, the entity/person referred to as Clay Riggs argues that his/its constitutional right to travel has been violated through the enforcement of Louisiana traffic laws against him/it. He/it claims that he/it is not a "driver" or an "operator" of a "motor vehicle." He/it elaborates that his/its GMC Suburban/SUV is not a "motor vehicle," but instead, is a "Private Conveyance/Carriage." The problem with this argument is that the entity/person referred to as Clay Riggs's so-called "Private Conveyance/Carriage" fits squarely within the legal definition of a "motor vehicle," and he/it himself/itself fits the law's definition of a "driver" or "operator." The entity/person referred to as Clay Riggs cannot render traffic laws inapplicable to himself/itself by rejecting the law's terminology and replacing it with his/its own terminology (nor otherwise).

In his/its third assignment of error, the entity/person referred to as Clay Riggs has much to say about the Uniform Commercial Code (the "UCC") and claims that he/it is a "Secured Party Creditor" thereunder, he/it is exempt from levy, and that the government is his/its perpetual debtor. The

11

entity/person referred to as Clay Riggs also states that he/it has been "estopped from paying debt with lawful constitutional money." There is a vast gulf between: (1) what the entity/person referred to as Clay Riggs apparently thinks he/it knows about the UCC and its relevance to this case; and (2) reality concerning the UCC and the reality of its absolute irrelevance to this case.

In another assignment of error not specially enumerated in his/its brief, the entity/person referred to as Clay Riggs makes a substantive argument. He/it argues that the arresting officer had no jurisdiction to arrest him/it because the chase began on Bright Road, which the entity/person referred to as Clay Riggs says is a federal game reserve road with no posted speed limit signs. Though substantive, this argument nonetheless fails for multiple reasons. First, as already explained, the officers had all the evidence needed to convict the entity/person referred to as Clay Riggs before he/it was arrested. Videoing the motor vehicle of the entity/person referred to as Clay Riggs as it was speeding and fleeing from an officer was not a search or a seizure. Nor was the arresting officer's identification of the entity/person referred to as Clay Riggs as the driver during the chase. Because the officer had probable cause to arrest at the time the entity/person referred to as Clay Riggs was pulled from his/its vehicle in the bayou, this confirmation of the entity/person referred to as Clay Riggs as the driver was not the product of an unlawful arrest.

Furthermore, there is no legal prohibition on a state officer gathering evidence that is not constitutionally protected (at the Louisiana or federal level) on a federal preserve or making an arrest thereon. That is especially so because (1) Louisiana has (concurrent) criminal jurisdiction regarding

12

crimes committed in a national forest; and (2) the enforcement of speed limits and noise regulations is totally consistent with the federal purpose of a national forest. La. R.S. 3:4283; *Bartlett v. Collector of Revenue*, 285 So. 2d 346 (La. App. 3 Cir. 1973); 18 U.S.C.A. §§ 7(3), 1111(b); *see United States v. Fields*, 516 F.3d 923 (10th Cir. 2008), *cert denied*, 556 U.S. 1167, 129 S.Ct. 1905 (2009). The entity/person referred to as Clay Riggs also sees the alleged location of where the officer initially attempted to stop him/it as depriving the Eighth Judicial District Court of Louisiana of jurisdiction over this case. The aforementioned authorities disprove this argument as well.

Finally, even assuming for the sake of argument that Riggs's arrest was a jurisdictional violation, such would not avail Riggs of the exclusionary sanction:

> Not all violations of statutory restrictions on arrest are constitutional violations. *Bickham,* 404 So.2d at 933. Nor have we extended the exclusionary rule to include non-constitutional violations of statutes which are not designed to protect the privacy interests of citizens. "When the statutory limitation (or duty) alleged to have been violated by the officer is not designed to implement fundamental rights of privacy, this court should not employ the exclusionary rule as a device to enforce such legislative directives. This is, of course, particularly true when the facts strongly support a finding that the officer acted reasonably and in good faith in arguably exceeding the bounds of his authority." *Bickham,* 404 So.2d at 933.

*State v. Gates*, 13-1422 (La. 5/7/14), 145 So. 3d 288, 299.

**SENTENCING**

**Error patent**

An illegal sentence[8] is an error patent and therefore may be vacated and corrected at any time. La. C. Cr. P. art. 882; *State v. Boowell*, 406 So.

---

[8] An "illegal sentence" is a sentence that is "not authorized by the statute or statutes which govern the penalty for the crime of conviction." *State v. Williams*, 23-0765

2d 213, 215 (La. 1981). As previously stated, the defendant's maximum possible sentence for the instant offense (without habitual offender adjudication) is five years. La. R.S. 14:108.1. The predicate offenses are two convictions of attempted possession of a firearm by a convicted felon (La. R.S. 14:27 and 14:95.1) and one conviction of possession of methamphetamine (La. R.S. 40:967). The trial court, in its written reasons for sentence, indicated that it was applying La. R.S. 15:529.1(A)(4)(a) in determining that the sentencing range is imprisonment of a minimum of 20 years to a maximum of the remainder of the defendant's natural life.

La. R.S. 15:529.1(A)(4) contains three separate provisions for determining the applicable sentencing range; which provision (or provisions) applies depends on certain circumstances. The instant case falls under both La. R.S. 15:529.1(A)(4)**(a)** and La. R.S. 15:529.1(A)(4)**(b)**.[9] These provisions state:

> (4) If the fourth or subsequent felony is such that, upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life then the following sentences apply:
> (a) The person shall be sentenced to imprisonment for the fourth or subsequent felony for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life.
> (b) If the fourth felony and no prior felony is defined as a crime of violence under R.S. 14:2(B) or as a sex offense under R.S. 15:541, the person shall be imprisoned for not less than twenty years nor more than twice the longest possible sentence prescribed for a first conviction. If twice the possible sentence prescribed for a first conviction is less than twenty years, the person shall be imprisoned for twenty years.

---

(La. App. 4 Cir. 12/11/23), 382 So. 3d 1018, *writ denied,* 24-00081 (La. 4/16/24), 383 So. 3d 144.

[9] Hereinafter, "subparagraph (a)" and "subparagraph (b)."

14

The instant offense, aggravated flight from an officer (La. R.S. 14:108.1), is a "crime of violence." La. R.S. 14:2(B)(39). None of the predicate offenses are crimes of violence or sex offenses. Therefore, subparagraph (b), by its terms, applies and dictates a sentence of twenty years while, *simultaneously*, subparagraph (a) applies and dictates a sentencing range of a minimum of 20 years to a maximum of the remainder of the defendant's natural life.

In *State v. Newton*, 42,743 (La. App. 2 Cir. 12/19/07), 973 So. 2d 916, 921, *writ denied,* 08-1147 (La. 1/16/09), 998 So. 2d 90, this court stated:

> In the absence of express legislative intent, principles of lenity require that any ambiguity in a sentencing statute be resolved in favor of the defendant. *State v. Burns,* 29,632 (La. App. 2d Cir. 9/24/97), 699 So. 2d 1179.
> The rule of lenity applies not only to interpretations of the substantive ambit of criminal laws, but also to the penalties imposed by those laws. When a criminal statute provides inconsistent penalties, the rule of lenity directs the court to impose the least severe penalty. *State v. Campbell,* 2003–3035 (La. 7/6/04), 877 So. 2d 112.

It strikes the court as quite odd that the legislature would (under subparagraph (b)) be more lenient toward a defendant whose instant offense is a crime of violence—i.e., more lenient than toward defendants with no crimes of violence (subparagraph (a)). However, we find no "express legislative intent" that resolves the inconsistency. To render subparagraph (b) inapplicable in this case, it would be necessary for us to, in effect, rewrite that provision of the legislation; moreover, if we did so, Riggs's sentencing exposure would be severely *increased*. Such is not the province of the judiciary, with or without supposed "express legislative intent." *Newton, supra*. Therefore, Riggs's sentence of life imprisonment is *illegal*, regardless of whether it is constitutionally prohibited as "cruel or unusual."

15

**Cruel or unusual**

By failing to file a motion to reconsider sentence, Riggs has waived his right to have the sentence reviewed for compliance with La. C. Cr. P. art. 894.1. The sole remaining question in this appeal is whether his sentence exceeds the punishment allowed by the state and federal constitutions. The Eighth Amendment of the United States Constitution and Article I, § 20, of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive. *State v. Sepulvado*, 367 So. 2d 762 (La. 1979). The appellate court must determine if the sentence is constitutionally excessive. *State v. Smith*, 01-2574 (La. 1/14/03), 839 So. 2d 1. A sentence is unconstitutionally excessive when it imposes punishment, grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. *State v. Bonanno*, 384 So. 2d 355 (La. 1980); *State v. Smith*, *supra*. The relevant question is whether the trial court abused its broad sentencing discretion, not whether another sentence might have been more appropriate. *State v. Cook*, 95-2784 (La. 5/31/96), 674 So. 2d 957, *cert. denied*, 519 U.S. 1043, 117 S. Ct. 615, 136 L. Ed. 2d 539 (1996). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. *State v. Weaver*, 01-0467 (La. 1/15/02), 805 So. 2d 166; *State v. Meadows*, 51,843 (La. App. 2 Cir. 1/10/18), 246 So. 3d 639, *writ denied*, 18-0259 (La. 10/29/18), 254 So. 3d 1208. The sentencing court has wide discretion to impose a sentence within the statutory limits, and the

sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. *State v. Williams*, 03-3514 (La. 12/13/04), 893 So. 2d 7.

In this case, we find that Riggs's life sentence exceeds what is constitutionally permissible. It shocks the sense of justice for a person to be subjected to such punishment for leading the police on a chase through a rural, unpopulated area. That crime, alone, would have exposed Riggs to a maximum of five years of incarceration. His mandatory sentence of 20 years under subparagraph (b), *supra*, thus *quadruples* the maximum sentence for Riggs's violation of La. R.S. 14:108.1. Riggs's violation of La. R.S. 14:108.1 was not the worst of such offenses. Because the offense of conviction adequately reflects the wrongful nature of Riggs's conduct, and his violation of La. R.S. 14:108.1 is not the worst of such violations, imprisonment beyond quadruple the maximum is nothing but a purposeless infliction of pain and suffering. At the end of his 20-year term, Riggs will be approximately 73 years old. Even an offender as recalcitrant as Riggs has a significant prospect of non-recidivism at such an age.

## CONCLUSION

Riggs's conviction for violation of La. R.S. 14:108.1 and his adjudication as a fourth felony offender are **AFFIRMED**. Riggs's sentence is **VACATED** and this matter is **REMANDED** for resentencing in accordance with this opinion.

17

**STEPHENS, J., concurring,**

I agree with Judge Stone that the motion to suppress was properly denied by the trial court. While I agree with Judges Ellender and Thompson that the trial court correctly applied La. R.S. 15:529.1(A)(4)(a) in determining the sentencing range applicable to this case, I find, as did Judges Stone and Hunter, that the sentence imposed in this case is unconstitutionally excessive. Though a fourth felony offender, the defendant is not the "worst type of offender," nor is he deserving of a maximum sentence, which, in this case, as a fourth felony offender, is life imprisonment.

**ELLENDER, J., concurs in part and dissents in part.**

I respectfully concur with the results, except for the issue of sentencing, for the reasons previously given, restated here. Initially, I do not agree La. R.S. 15:529.1 (A)(4)(b) applies to this case. Contrary to the majority's reading, this subsection applies only if neither the crime of conviction nor any of the prior felonies is defined as a crime of violence. *See*, *e.g.*, *State v. Brown*, 19-695 (La. App. 3 Cir. 5/6/20), 297 So. 3d 947, *writ denied*, 20-00713 (La. 9/29/20), 301 So. 3d 1194. Obviously, Riggs's crime of conviction, aggravated flight from an officer, is defined as a crime of violence. La. R.S. 14:2 (B)(39). I am unaware of any reported case supporting the majority's view that the statute is ambiguous and subsection 529.1 (A)(4)(b) somehow applies. Consequently, I believe the trial court was correct in applying R.S. 15:529.1 (A)(4)(a) and determining Riggs's sentencing range was 20 years to life.

As for the life sentence imposed, I do not agree it is unconstitutionally excessive. The emphasis of the majority is that the offense of conviction occurred in a rural, unpopulated area, and that the maximum sentence he could have received under R.S. 14:108.1 was five years at hard labor. While this chase did occur primarily on unpopulated, rural Forest Service roads, it was not a minor incident. Riggs ultimately flipped and crashed his SUV off a narrow, wooden bridge and into a creek, with three occupants in the vehicle. At least one of his passengers hit her head on the windshield and told officers she "was scared and cold and wet" once pulled from the overturned SUV. Not only did Riggs put his life and that of the pursuing officer in danger, but also the lives of his three passengers.

1

The majority also gives inadequate weight to Riggs's significant criminal history and his defiant insistence that the laws of our state do not apply to him. As pointed out by Judge Wiley in her detailed written sentencing reasons, Riggs is at least an eight-time felony offender, with prior crimes including not only those used to adjudicate him a fourth felony offender, but also convictions for simple burglary (twice), aggravated battery, theft, simple assault, and simple battery. Some of these offenses were committed while on probation or parole, resulting in revocation.

Parenthetically, two of the predicate offenses used to support Riggs's adjudication as a multiple offender, attempted possession of a firearm by a convicted felon, were redesignated, shortly after the offense of conviction, as crimes of violence. 2022 La. Acts No. 702 (effective June 18, 2022). In these circumstances, the life sentence would now be mandatory. La. R.S. 15:529.1 (A)(4)(c). This places Judge Wiley's sentencing choice in a favorable perspective.

At 53 years old, Riggs is not a youthful offender and, in spite of a life of crime spanning from 1992 to the present resulting in long stretches of incarceration, he continues to believe the laws of this state do not apply to him. It is one thing to file a multitude of pleadings challenging "corporate existence" as a so-called "sovereign citizen," but it is quite another to habitually defy our criminal laws and refuse to accept responsibility for one's actions. By his words and deeds, Riggs has steadfastly demonstrated his utter refusal to ever become a law-abiding citizen.

On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. *State v. Fruge*, 14-1172 (La. 10/14/15), 179 So. 3d 579. I

2

believe this record supports Judge Wiley did not abuse her vast sentencing discretion within the statutory limits. For these reasons, I respectfully dissent.