Judgment rendered November 19, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,576-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

ETHAN M. DOYLE                              Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 400,743

Honorable Donald Edgar Hathaway, Jr., Judge

* * * * *

LOUISIANA APPELLATE PROJECT                 Counsel for Appellant
By: Edward Kelly Bauman

JAMES EDWARD STEWART, SR.                   Counsel for Appellee
District Attorney

STEPHEN FOLK-CRUTHIRDS
ERIC MATTHEW WHITEHEAD
Assistant District Attorneys

* * * * *

Before STONE, THOMPSON, and ELLENDER, JJ.

**STONE, J.**

This criminal appeal arises from the First Judicial District Court, the Honorable Donald Hathaway presiding. Ethan M. Doyle ("Doyle"), the defendant, was charged with aggravated flight from an officer (La. R.S. 14:108.1) and aggravated obstruction of a highway (La. R.S. 14:96). The latter carries a maximum sentence of 15 years, while the former carries a maximum of 5 years. After a jury trial, the defendant was convicted on both counts. Thereafter, the court ordered and obtained a presentence investigation report ("PSI"), and sentenced Doyle to 5 years on both counts, to run concurrently. Doyle now appeals his conviction and sentences, urging the following assignments of error: (1) his trial counsel was ineffective because he failed to file a motion to suppress and/or quash the bill; (2) his conviction for both offenses violates double jeopardy; and (3) his maximum sentences are excessive.

On March 9, 2024, Deputy Adrian Ruffin ("Dpty. Ruffin") of the Shreveport Police Department observed the defendant's vehicle traveling on North Market Street with a black garbage bag covering the rear driver-side door window—thus blocking defendant's ability to see through that window as he drove the vehicle. Dpty. Ruffin also stated that the bag was not secure. Finding this suspicious for the traffic offense of improper equipment, Dpty. Ruffin activated his lights on his patrol unit. Doyle initially pulled over and stopped, but then blasted off as Dpty. Ruffin was preparing to get out of his police unit. Dpty. Ruffin gave chase all the way into Bossier City but terminated his pursuit on Hwy 71 when he felt it was too dangerous as Doyle was "weaving in and out of traffic." Dpty. Ruffin stated that there was at least one other person in the car with Doyle during the chase.

However, Dpty. Ruffin's dashcam recording was not introduced into evidence.

Later, upon identifying the Doyle vehicle at the intersection of Hwy 71 and Hwy 173, Caddo Parish Sherriff's Deputy Cory Bourn ("Dpty. Bourn") activated his lights and Doyle fled again. The chase resumed and Doyle's vehicle was eventually stopped with the use of spike strips. Dpty. Bourn reported that he observed the defendant traveling at 105 mph in a 55 mph speed zone, 85 mph in a 45 mph zone in the residential area of Hosston, and over 100 mph on Interstate 49; Caddo Parish Sherriff's Deputy Keith Morgan ("Dpty. Morgan"), who followed behind Dpty. Bourn in the latter chase, reported the defendant traveling at 114 mph in a 75 mph zone on Interstate 49. As his dashcam footage was played for the jury, Dpty. Bourn testified that Doyle drove in the opposing lane to pass another vehicle.

Doyle was *Mirandized* and arrested after officers stopped him. Doyle complied with officers' commands once stopped. When asked why he did not stop, Doyle claimed he did not know police were pursuing him. In the police bodycam video, his movement and speech were noticeably slow, and his demeanor was quiet and subdued. One officer commented that there was an open alcoholic beverage container in the car.

Nobody else was in the vehicle when officers finally stopped Doyle. However, the car did contain a wallet belonging to another person with outstanding arrest warrants for possession of methamphetamine and crack cocaine. Doyle's wallet contained $489 cash. Bodycam video recorded officers discussing the matter and inferred that Doyle had dropped off his passenger(s) in between the two pursuits and had potentially eaten all the

2

(suspected) drugs; they were concerned he would die of overdose in the police vehicle, and they discussed bringing him to the hospital before jail.

In Doyle's PSI interview, he stated:

> First, I would like to take responsibility for my actions. I do understand the risk to public safety that I caused. I am extremely grateful that nobody was hurt as a result of my actions. At the time of my arrest, I was dealing with recent death of my grandfather, and [another close family member had been diagnosed with leukemia]. I was depressed and made a poor decision that day. I had relapsed on alcohol, losing several years of sobriety.

Doyle also stated that he had completed "Change the World" and "Anger Management" classes while awaiting trial and had been accepted to CADA[1] for inpatient addiction treatment and 3 months of sober living.

Doyle's record of arrests and prosecutions ("RAP sheet") is also in the record. He has quite a history with marijuana. In 2011, he was twice arrested for misdemeanor possession of marijuana; both resulted in prosecutorial charges filed but later dismissed. In 2012, he was arrested for felony burglary but no charges were filed. In 2013, he was: (1) charged with a felony drug offense but convicted only of misdemeanor marijuana possession; (2) in a separate incident, he was arrested and charged separately for another instance of misdemeanor marijuana possession (charges dismissed); and (3) twice charged and convicted for misdemeanor theft (stemming from two separate incidents). In 2021, Doyle was again convicted of misdemeanor marijuana possession, and three weeks later was arrested for misdemeanor theft.

After Doyle was sentenced, he did not file a motion to reconsider sentence.

---

[1] This is an acronym for Council on Alcoholism & Drug Abuse.

**Justification for initial stop**

Relevant to Dpty. Ruffin's reason for initially attempting to stop

Doyle, La. R.S. 32:53(A)(1) states:

> No person shall drive…on any highway of this state…any vehicle… which is in such unsafe condition as to endanger any person or property.

**Aggravated flight**

On the date of the offense, La. R.S. 14:108.1, in relevant part,

provided:

> C. Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop…under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. The signal shall be given by an emergency light and a siren on a vehicle marked as a police vehicle...
>
> D. Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle or watercraft commits at least two of the following acts:
>
> (1) Leaves the roadway or forces another vehicle to leave the roadway.
>
> (2) Collides with another vehicle...
>
> (3) Exceeds the posted speed limit by at least twenty-five miles per hour.
>
> (4) Travels against the flow of traffic...
>
> (5) Fails to obey a stop sign or a yield sign.
>
> (6) Fails to obey a traffic control signal device.
>
> E. (1) Whoever commits aggravated flight from an officer shall be imprisoned at hard labor for not more than five years and may be fined not more than two thousand dollars.[2]

---

[2] Paragraph (2) of subsection (E) provides a higher potential penalty if the defendant causes serious bodily injury:  "Whoever commits the crime of aggravated flight from an officer that results in serious bodily injury shall be imprisoned at hard labor for not more than ten years and may be fined not more than two thousand dollars."

Thus, the elements of this crime are: (1) intentional refusal by a driver to stop his vehicle; (2) despite knowing that a police officer has given him a visual and audible signal to stop; (3) the police officer has reasonable suspicion for the stop; (4) such refusal to stop involves two or more of the six following circumstances: a vehicular collision, speeding by 25mph or more, driving the wrong way down the street, failure to obey a stop sign, yield sign, or traffic light.

**Aggravated obstruction of a highway**

In pertinent part, La. R.S. 14:96 provides:

> A. Aggravated obstruction of a highway of commerce is the intentional or criminally negligent…performance of any act on any… road, highway, [or] thoroughfare wherein it is foreseeable that human life might be endangered.

> B. Whoever commits the crime of aggravated obstruction of a highway of commerce shall be imprisoned, with or without hard labor, for not more than fifteen years.

Thus, the elements of this crime are: (1) performance of an intentional or criminally negligent act on any road; (2) wherein it is foreseeable that human life might be endangered.

**Suppression; ineffective assistance**

As explained more fully below, Doyle argues: (1) that his arrest was illegal because the "initial attempted stop" was unjustified, and, therefore, evidence derived from that constitutional violation should have been suppressed; and therefore, (2) his trial counsel was ineffective in failing to move to suppress the evidence. Doyle also relates his aggravated flight from the officer to the (lawful) resistance of an unlawful arrest.

*Suppression.* In *State v. Robinson*, 52,974 (La. App. 2 Cir. 3/18/20), 293 So. 3d 193, 201, *writ denied*, 20-00525 (La. 10/20/20), 303 So. 3d 315,

we explained the constitutional boundaries on searches and seizures by law enforcement:

> The right of every person to be secure in his person, house, papers, and effects against unreasonable searches and seizures is guaranteed by the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution. However, that declaration of rights "presupposes that there must be an invasion of [the] right to privacy before there can be an unreasonable *search*." *State v. Jackson,* 09-1983 (La. 7/6/10), 42 So. 3d 368. (Emphasis added). Simply stated, if there has been no "search" or "seizure," as defined by the constitutional jurisprudence, then there cannot be a constitutional violation. With regard to whether a search has occurred, the inquiry is whether there was "an objectively reasonable expectation of privacy in the area." *Id*.

In *California v. Hodari D.,* 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), the United States Supreme Court held that an individual is not "seized" within the meaning of the Fourth Amendment until that individual either submits to the police show of authority or is physically contacted by the police. In *State v. Tucker*, 626 So. 2d 707, 712-13 (La.), *opinion reinstated on reh'g*, 626 So. 2d 720 (La. 1993), the Louisiana Supreme Court adopted *Hodari D.*, but also held that the Louisiana constitution provides more protection than its federal counterpart:

> Today we adopt *Hodari D.*'s definition for determining when an "actual stop" has occurred. We additionally adopt a standard for determining [under the Louisiana constitution's additional protection] the "imminency" of an actual stop which focuses on whether an "actual stop" is "virtually certain" to result from the police encounter. To the extent this decision conflicts with our prior decisions, they are hereby overruled.

*Id. Tucker* articulated the additional protection as follows:

> In determining whether an "actual stop" of an individual is "imminent," we find that the focus must be on the degree of certainty that the individual will be "actually stopped" as a result of the police encounter...It is only when the

police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is *virtually certain,* that an "actual stop" of the individual is "imminent."

*Id. Tucker* also provided a list of factors a court may consider in determining when an imminent actual stop was virtually certain:

> [T]he following factors may be useful in assessing the extent of police force employed and determining whether that force was *virtually certain* to result in an "actual stop" of the individual: (1) the proximity of the police in relation to the defendant at the outset of the encounter; (2) whether the individual has been surrounded by the police; (3) whether the police approached the individual with their weapons drawn; (4) whether the police and/or the individual are on foot or in motorized vehicles during the encounter; (5) the location and characteristics of the area where the encounter takes place; and (6) the number of police officers involved in the encounter.

*Id.*

In relevant part, La. C. Cr. P. art. 703 provides:

> A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
>
> ...
>
> C. A motion filed under the provisions of this Article must be filed in accordance with Article 521,[4] unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
>
> D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
>
> E. (1) An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would

7

require the granting of relief. The state may file an answer to the motion.

...

F. A ruling prior to trial on the merits, upon a motion to suppress, is binding at the trial. Failure to file a **\*\*6** motion to suppress evidence in accordance with this Article prevents the defendant from objecting to its admissibility at the trial on the merits on a ground assertable by a motion to suppress.

In *Robinson*, *supra*, we also explained the procedural and evidentiary aspects of enforcing these constitutional freedoms:

> Generally, if evidence was derived from an unlawful search or seizure, the proper remedy is exclusion of the evidence from trial. On a motion to suppress evidence on the ground that it was unconstitutionally obtained, the prosecution has the burden of proving the admissibility of any evidence seized without a warrant. La. C.Cr.P. art. 703(D).
>
> The standard of review applicable to a trial court's decision on a motion to suppress is bifurcated as follows: (1) legal findings or conclusions are subject to *de novo* review; and (2) findings of fact are subject to manifest error review. Manifest error review requires great deference to the factfinder's decisions regarding witness credibility.

*Id.*

This court recently addressed an argument virtually identical to Doyle's in *State v. Riggs*, 55,736 (La. App. 2 Cir. 7/23/25), ---So.3d---. There, Riggs drove past an officer who then began following Riggs's vehicle due to its suspected excessive muffler noise. Riggs abruptly accelerated—violating the speed limit--before the officer turned on his lights. The officer pursued, and after a long chase, Riggs drove his vehicle off a bridge and into a bayou, and was then rescued from the vehicle and arrested. Riggs argued that all evidence obtained after the officer began following him had to be suppressed because there was no reasonable suspicion at the time the officer

8

began following him.  Pursuant to *Hodari D., supra*, and *Tucker, supra*, we

rejected that argument, stating:

> By the time that Riggs unintentionally cast himself into the
> bayou, the officers *already* had acquired the evidence
> needed to convict Riggs of aggravated flight from an
> officer. Riggs was not virtually certain to imminently be
> stopped until he had *already* been recorded on video
> speeding and committing aggravated flight from an officer.
> The exclusionary sanction, by definition, only excludes
> evidence *derived from* an unlawful arrest, detention,
> search, or seizure. Given the facts of this case, it is
> logically impossible that the testimony and video *of what
> Riggs did before his vehicle was stopped* was derived from
> the stop of his vehicle. That is so under the rule of *Hodari
> D., supra*, and the heightened protection under *Tucker,
> supra*. Thus, even assuming for the sake of argument that
> the officer lacked reasonable suspicion at the time he
> began to follow Riggs, the trial court was correct in
> denying the motion to suppress such evidence.
>
> Furthermore, the officer had probable cause to arrest Riggs
> by the time the arrest was actually made as the officer had
> quite personal knowledge that Riggs was speeding and
> committing flight from the arresting officer himself.
> Riggs's arrest was lawful. Therefore, any evidence derived
> from the arrest, such as confirming Riggs's identity as the
> driver, is not subject to suppression under either the
> federal constitution or Louisiana constitution.

*Id.* The constitution only prohibits unreasonable searches and seizures, and

thus the exclusionary sanction does not attach until the suspect is seized.

Doyle argues that the bag over his window did not constitute a

violation of La. R.S. 32:53(A)(1), *supra*, and therefore, Dpty. Ruffin lacked

reasonable suspicion to attempt to stop him.  The statute states: "No person

shall drive…on any highway of this state…any vehicle…which is in such

unsafe condition as to endanger any person or property."  Doyle also creates

a strawman to pummel in suggesting that Dpty. Ruffin had in mind La. R.S.

32:361, which only prevents covering of the *front* windshield and *front*

windows.

Doyle's argument for suppression is without merit for the reasons set forth in *Riggs, supra*. Even if it is assumed for the sake of argument that the initial attempted stop was unlawful, it makes no difference. No evidence gathered *before* Doyle was arrested could possibly be derived from his arrest; accordingly, such evidence is categorically beyond the exclusionary sanction. *Robinson*, *supra*; *Riggs*, *supra*. The moment Doyle violated the speed limit by even one mile per hour in fleeing Dpty. Ruffin, he had probable cause to arrest Doyle. Having escaped Dpty. Ruffin's pursuit, Doyle grossly violated the speed limit and other traffic laws when Dpty. Bourn resumed that pursuit. Thus, when the officers finally arrested Doyle, there (emphatically) was probable cause. *Tucker*, *supra*; *Hodari D.*, *supra*.[3] Therefore, Doyle has failed to show that his trial counsel was ineffective.

**Double jeopardy**

The double jeopardy clause of U.S. Const. amend. V provides: "No person shall…be subject for the same offence to be twice put in jeopardy of life or limb." The double jeopardy clause of La. Const. art. I, § 15 likewise states: "No person shall be twice placed in jeopardy for the same offense."

In *State v. Frank*, 16-1160 (La. 10/18/17), 234 So. 3d 27, the Louisiana Supreme Court re-established the "*Blockburger* test" as the sole standard for determining whether the prohibition against double jeopardy has been violated in a particular case, thereby abrogating the "same evidence test" that was for a time used in addition to the "*Blockburger* test."

---

[3] Furthermore, assuming *arguendo* that the initial attempted stop was unlawful, such did not exempt Doyle, in his resistance thereto, from applicability of traffic laws or give him the privilege of recklessly endangering human life without legal consequences. Thus, Doyle's claim regarding "resisting an unlawful arrest" is meritless.

*Blockburger* holds that if a defendant is to be convicted of two crimes

arising for the same criminal incident, then each crime must have an

essential element that the other does not; otherwise, double jeopardy is

violated. *Id.*

State v. Holley, 53,405 (La. App. 2 Cir. 4/22/20), 297 So. 3d 180, 185*,*

*writ denied,* 20-00923 (La. 11/10/20), 303 So. 3d 1036.

> The guarantee against double jeopardy provides three
> central constitutional protections: (1) protection against a
> second prosecution for the same offense after acquittal; (2)
> protection against a second prosecution for the same
> offense after conviction; and (3) protection against
> multiple punishments for the same offense. *State v.*
> *Crandell,* 05-1060 (La. 3/10/06), 924 So. 2d 122.
>
> …
>
> Double jeopardy bars separate punishment of lesser
> included offenses once the defendant is convicted of the
> greater offense. *State v. Price,* 39,582 (La. App. 2 Cir.
> 3/23/05), 899 So.2d 633. The double jeopardy clause
> prohibits prosecution for both a felony murder and the
> underlying felony. *State v. Thomas*, 50,929 (La. App. 2 Cir.
> 8/10/16), 201 So. 3d 263, 278, *writ denied*, 16-1642 (La.
> 9/6/17), 224 So. 3d 980. To remedy a violation of double
> jeopardy, the reviewing court normally vacates the
> conviction and sentence of the less severely punishable
> offense, and affirms the conviction and sentence of the
> more severely punishable offense. *Price, supra.*

However, *State v. Kirsh*, 17-0231 (La. App. 1 Cir. 11/1/17), 234 So. 3d

941, 948, *writ denied,* 17-2169 (La. 11/20/18), 256 So. 3d 993,[4] makes a

critical distinction:

> The prohibition against double jeopardy is not violated,
> however, when the defendant is prosecuted for different
> criminal acts committed during one sequential, continuing
> course of conduct. In those instances, the defendant is not
> being punished twice for the same act. Rather, he has
> committed and can be prosecuted for separate crimes
> attributable to separate and distinct acts that occurred
> successively. Because the evidence showed that two

---

[4] *Kirsch* cited *Frank, supra*, and applied only the *Blockburger* test.

separate crimes occurred, each of which could have been proven without any evidence as to the other, no double jeopardy violation occurred. (Internal citations and quotation marks omitted.)

Thus, in this case, the state divides the event into distinct crimes committed sequentially, arguing:

When Doyle traveled in the wrong lane at high speeds through residential areas in multiple towns (Gilliam and Hosston), he intentionally performed an act wherein it is foreseeable that human life might be endangered. These acts distinctly and independently constituted Aggravated Obstruction of a Highway. When Doyle, having been given audible and visual signals to stop, fled at speeds nearly doubling the posted speed limit against the flow of traffic, leaving the roadway, and causing others to leave the road and lanes of travel, he actually endangered human life. These acts distinctly and independently constituted Aggravated Flight from an Officer.

The evidence supports the state's position. Doyle escaped the first pursuit by making it too dangerous for Dpty. Ruffin to maintain. Thereafter, Doyle led other law enforcement officers on a second high-speed chase once he was identified as the escapee of the first pursuit. Thus, the evidence proves two separate, sequential crimes that were part of the same criminal episode. This assignment of error lacks merit and is rejected. Likewise, Doyle's trial counsel was not ineffective in declining to file a motion to quash.

**Excessive sentence**

In *State v. Boswell*, 56,200 (La. App. 2 Cir. 4/9/25) 409 So. 3d 491, we recently reiterated the law concerning excessive sentence claims:

An excessive sentence claim is reviewed by examining whether the trial court adequately considered the guidelines established in La. C. Cr. P. art. 894.1 and whether the sentence is constitutionally excessive. Ordinarily, appellate review of sentences for excessiveness utilizes a two-prong process. However, when the motion to reconsider sentence raises only a claim of constitutional

12

excessiveness, a defendant is relegated [under La. C. Cr. P. art. 881.1(E)] to review of the sentence on that ground alone.

Boswell, by failing to state specific grounds for his motion to reconsider sentence, has waived his right to have his sentence reviewed for compliance with art. 894.1. As a result, the remaining question is whether his sentence exceeds the punishment allowed by the state and federal constitutions.

The Eighth Amendment of the United States Constitution and Article I, § 20 of the Louisiana Constitution prohibit the imposition of cruel or excessive punishment. Although a sentence falls within statutory limits, it may be excessive.

The appellate court must determine if the sentence is constitutionally excessive. To assess a claim that a sentence violates La. Const. art. I, § 20, the appellate court must determine if the sentence is grossly disproportionate to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice.

The sentencing court has wide discretion to impose a sentence within the statutory limits, and the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. On review, an appellate court does not determine whether another sentence may have been more appropriate, but whether the trial court abused its discretion. (Internal case citations omitted.)

Regarding maximum sentences, this court has stated:

Maximum sentences are generally reserved for the "most egregious and blameworthy offenders in a class." As a general rule, maximum or near maximum sentences are reserved for the worst offenders and the worst offenses. *State v. Cozzetto,* 2007–2031 (La.02/15/08), 974 So.2d 665; *State v. Hogan,* 47,993 (La.App.2d Cir.04/10/13), 113 So.3d 1195, *writ denied,* 2013–0977 (La.11/08/13), 125 So.3d 445. The trial court is given wide discretion in the imposition of sentences within the statutory limits. Such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. *State v. Williams,* 2003–3514 (La.12/13/04), 893 So.2d 7; *State v. Diaz,* 46,750 (La.App.2d Cir.12/14/11), 81 So.3d 228.

*State v. Cotten*, 50,747 (La. App. 2 Cir. 8/10/16), 201 So. 3d 299, 302.

Because Doyle did not file a motion to reconsider sentence, our review is limited strictly to determining constitutional excessiveness.

La. R.S. 14:108.1(E)(1) carries a maximum potential incarceration period of 5 years; for La. R.S. 14:96, the maximum is 15 years. The trial court sentenced the defendant to 5 years on both convictions and ordered that the sentences run concurrently.

Doyle argues that his sentence is excessive because: (1) he is a first time felony offender with only misdemeanors on his record; (2) no harm to person or property resulted from his actions; (3) he graduated high school and worked as a driver for a casino; and (4) nothing indicates that he could not be rehabilitated or would be a danger to society if released earlier.

The state rebuts item "(2)" in Doyle's argument on the ground that if serious bodily injury results, a distinct type of aggravated flight occurs and a separate penal provision applies, raising the maximum possible sentence to ten years. La. R.S. 14:108.1(E)(2). From this premise, the state argues that Doyle's claim to mitigation on the ground that he did not hurt anyone is invalid. The state also emphasizes the severity and danger of the particular facts of Doyle's crimes herein.

It is true that Doyle did not kill or maim anyone. Nor did he destroy the property of others. However, this was not by merit of his own. The magnitude of the harm that he could have foreseeably caused is vast. Moreover, the trial court was within its authority to consider, for sentencing purposes, Doyle's RAP sheet and officer testimony indicating that, after escaping the first pursuit, Doyle had dropped off a passenger who had outstanding arrest warrants for possession of methamphetamine and cocaine. This evidence impeaches Doyle's claim that his tenacious and persistent

14

flight was completely irrational and driven solely by emotional pain—rather than hiding his apparent association with drug-involved individuals.  Doyle's effective aggregate sentence of five years for his two felony convictions is not in excess of constitutional boundaries.

## CONCLUSION

Ethan M. Doyle's convictions and sentences are **AFFIRMED** and his ineffective assistance claim is **DENIED**.